## INDIANA UNION TRACTION COMPANY v. MYERS, ADMINISTRATRIX.

[No. 6,874.   Filed February 2, 1911.   Rehearing denied May 18, 1911.]

1. NEGLIGENCE.—*Contributory.*—*Burden of Proof.*—The burden of proving contributory negligence is on defendant. p. 648.

2. TRIAL.—*Verdict.*—*Contributory Negligence.*—A general verdict for the plaintiff in a negligence case constitutes a finding that the plaintiff was not guilty of contributory negligence. p. 648.

3. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh oral evidence, but will determine whether there is any evidence tending to support the verdict, and if there is, the verdict is conclusive. p. 648.

4. RAILROADS.—*Interurban.*—*Crossing Injuries.*—*Contributory Negligence.*—*Jury.*—Where the evidence tends to show that plaintiff's decedent was driving a covered milk wagon, that he attempted to cross defendant interurban railroad company's track, that obstructions prevented his vision of the track to the north until he was within six or eight feet of the track, that about 300 feet north from the crossing defendant sounded the whistle, that the car was running thirty miles an hour, that decedent's horses were on the track when he was first enabled to see up the track, that the motorman made little or no effort to check the car until the collision happened, and that the car ran from 125 to 150 feet before stopping, the question of decedent's contributory negligence is for the jury.   pp. 648, 652.

5. RAILROADS.—*Crossings.*—*Danger.*—*Notice.*—A known railroad crossing constitutes notice of danger, and the unexcused failure of a traveler to use his senses in looking and listening for approaching cars, will preclude a recovery, where such failure proximately contributes to his injury.   p. 651.

6. NEGLIGENCE.—*Contributory.*—*Burden of Proof.*—*Danger.*—*Presumptions.*—Proof that decedent knew that the railroad crossing on which he was killed was dangerous does not establish contributory negligence, as contributory negligence must be established by evidence and not by presumptions.   p. 651.

7. RAILROADS.— *Highway Crossings.*— *Sounding Whistles.*— *Negligence.*—The failure of an interurban railroad company to sound its whistle not more than 100 rods nor less than 80 rods from a highway crossing constitutes a misdemeanor (§2679 Burns 1908, Acts 1905 p. 584, §673) and, as to one using such crossing, is negligence *per se.*   p. 652.

Indiana Union Traction Co. v. Myers—47 Ind. App. 646.

8. APPEAL.—*Briefs.*—*Instructions.*—*Setting out Part.*—Where an instruction is attacked, the brief should set it out entire, since it must be considered as a whole. p. 654.

9. TRIAL.—*Instructions.*—*Invading Province of Jury.*—The facts of a case are for the jury and should not be assumed in the instructions. p. 654.

10. NEGLIGENCE.—*Last Clear Chance.*—*Complaint.*—*Instructions.*— Under general allegations of negligence, evidence is admissible to show that defendant violated a duty under the doctrine of "last clear chance," and an instruction as to liability thereunder is proper where there is evidence tending to show a violation of such duty. p. 654.

11. RAILROADS.—*Intcrurban.*—*Negligence.*—*Last Clear Chance.*— *Highway Crossings.*—Where the plaintiff's horses were on the interurban tracks when the car was 300 feet away running thirty miles an hour and no effort was made to check the car, a collision appearing inevitable, the doctrine of "last clear chance" applies. p. 657.

From Henry Circuit Court; *Ed Jackson*, Judge.

Action by Anna Myers, as administratrix of the estate of Franklin C. Myers, deceased, against the Indiana Union Traction Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals. *Affirmed.*

*J. A. Van Osdol, Kittinger & Diven* and *Forkner & Forkner*, for appellant.

*Eugene H. Bundy* and *Wymond J. Beckett*, for appellee.

MYERS, C. J.—Appellee brought this action against appellant to recover damages for the death of her decedent, Franklin C. Myers, resulting from the alleged negligence of appellant in running one of its cars against the decedent at a highway crossing. A complaint in one paragraph, answered by a general denial, formed the issues submitted to a jury, resulting in a verdict and judgment in favor of appellee. Appellant's motion for a new trial was overruled, and this ruling is assigned as error. Under this assignment the questions discussed, and the errors relied on for a reversal of the judgment, are presented.

Appellant first insists that the evidence shows, without

any contradiction, that decedent was himself guilty of contributory negligence. The burden of showing contributory negligence on the part of decedent was on appellant. The general verdict amounted to a finding that appellant had not established that fact.

It must be kept in mind that appellate tribunals in this jurisdiction will not weigh oral evidence, but will look to the evidence, when its sufficiency to sustain the verdict is challenged, and consider it most favorably and with all reasonable inferences to be drawn therefrom, in support of the general finding of the jury. *Cleveland, etc., R. Co.* v. *Wynant* (1893), 134 Ind. 681, 686; *Robbins* v. *Spencer* (1895), 140 Ind. 483, 487. In matters of this character it is not our province to interfere when the evidence, measured by the rule stated, is such that fair-minded and reasonable men might draw different conclusions.

The question now under consideration requires us to examine the evidence. Some facts are not in dispute, while as to others there is sharp conflict in the evidence. The accident occurred on September 27, 1906, about 3 or 4 o'clock in the afternoon. It had been raining, and the afternoon was dark and gloomy. The collision happened on a public highway known as Thirty-eighth street, in the city of Indianapolis, where said highway crossed at right angles appellant's line of double track interurban railroad, then constructed along a platted highway known as College avenue. Neither highway at that point was then within the corporate limits of Indianapolis. The country in the immediate vicinity of said crossing was practically level, and but sparsely settled. On the west side of College avenue, beginning from six to fifteen feet north of Thirty-eighth street, and sixteen and one-half feet west of the track, was a line of shade trees, extending

north from one thousand two hundred to one thousand six hundred feet. The witnesses refer to the first of these trees at Thirty-eighth street as a tall maple, its body being about six inches in diameter, with limbs branching out in all directions about seven feet above the ground. The next one north is described as having the appearance of a broken down tree, with sprouts, possibly eight or ten feet high, growing up from its roots, and forming a bushy top ten or twelve feet in diameter. The remainder of the row consisted of catalpa trees, about fifteen feet tall, with limbs branching out about five or six feet above the ground. A witness testified that the limbs were so close to the ground that he had to stoop when walking under them. Immediately north of Thirty-eighth street, and fronting on College avenue, were two vacant lots. On the next lot north was a dwelling-house facing the east, and located about forty feet west of the railroad track. A short distance west of the house was a barn. A few feet south of the dwelling and barn was a board fence, five or six feet high, extending from College avenue west. These buildings and said trees, and the high weeds in the common north of the house and barn, says a witness, obstructed the view, along College avenue north of said crossing, of persons traveling east along Thirty-eighth street toward the crossing. At a point on Thirty-eighth street, about two hundred feet west of the crossing, it is said that one looking north between the barn and the house could possibly have seen a car approaching for two squares, but after that the house and trees obstructed the view of approaching cars until within six or eight feet of the track. Decedent at the time of the accident was thirty-four years old, and in possession of all his senses, except he had a defect of hearing in his right ear. He was familiar with the situation of the crossing, and knew that cars ran over this crossing at frequent intervals. He resided within one and one-half miles of the crossing, and had traveled over it once a

day for ten months. At the time of the accident he was driving two horses attached to a covered milk wagon, and had approached the crossing from the west. Appellant's car which collided with the wagon came from the north, at a speed estimated at thirty miles an hour. It was an interurban electric car, equipped with a whistle, and when within about three hundred feet of the crossing—the horses on the track, decedent sitting on a seat about the center of the wagon with the door to his left open, and looking toward the car—whistling danger signals were given. The evidence sustains a finding that the whistle was not sounded within the hearing of a person at the crossing prior to the danger signal. The point where these signals should have been given was between Fortieth and Forty-first streets, Fortieth street being 1,200 feet north of Thirty-eighth street. When the horses reached the railroad track, they were walking. A short distance back from the crossing they were in a slow trot. There is some evidence from which it might be inferred that the decedent looked and listened, but none that he stopped before going onto the track. The motorman on the car was standing in the front vestibule looking ahead. He testified that the horses had just cleared the track when the car collided with the wagon, and that he stopped the car about one hundred twenty-five or one hundred fifty feet south of where the collision occurred; that as soon as he saw the traveler was not going to get off the track in time to avoid a collision he attempted to stop the car, and had decreased the speed at least one-half when he reached Thirty-eighth street. Other eyewitnesses to the transaction testify they could not notice any lessening of the speed of the car. We find no evidence as to the distance required to stop the car when running at the rate of thirty miles an hour. If appellant's servants in charge of said car gave any signals of the approaching car other than the danger signals immediately before the collision, there is

no evidence that decedent heard them. For 1,200 feet north of Thirty-eighth street the track is down grade toward Thirty-eighth street.

The jury found that decedent was not guilty of contributory negligence. We are asked to disturb this finding on the theory that the evidence affirmatively and conclusively shows that decedent was actively and contemporaneously at fault at the time the alleged wrongful injury was inflicted.

5. As a proposition of law, a grade railroad crossing is a place of danger, and to a person intending to cross, who is acquainted with its existence and surroundings, it is a warning of danger. *Malott* v. *Hawkins* (1902), 159 Ind. 127; *Southern R. Co.* v. *Davis* (1905), 34 Ind. App. 377.

In this case, decedent was acquainted with the crossing, and was bound to know of the attendant dangers in attempting to cross. He was required to be vigilant in the use of his senses to avoid injury, therefore it was his duty to look and listen for approaching cars, and his failure so to do, without an excuse therefor, will be regarded as an act of negligence, which, if it proximately contributed to his injury, will preclude a recovery. *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 406; *Chicago, etc., R. Co.* v. *Hedges* (1889), 118 Ind. 5; *Wabash R. Co.* v. *Keisler* (1904), 163 Ind. 609; *Malott* v. *Hawkins, supra; Southern R. Co.* v. *Davis, supra.*

6. Appellant had the burden of proving decedent guilty of contributory negligence, and that fact was not made out by merely showing that decedent knew the crossing was a dangerous place. Contributory negligence is established by evidence, and not by presumptions. *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589. It is a fact to be determined as other facts, upon all the evidence and circumstances of the particular case. *Pitts-*

*burgh, etc., R. Co.* v. *Scivers* (1904), 162 Ind. 234; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697.

In the case last cited it is said: "A casualty resulting in the personal injury or death of a traveler from contact with cars at such place is necessarily occasioned by the concurrent acts of two parties, and in actions therefor, by their pleadings each in terms or legal effect charges the other with negligence contributing to the result. In such actions neither party has a *prima facie* cause of action or defense, unless it be shown that the proximate cause of the injury was the violation of a statute or municipal ordinance, and otherwise the court cannot indulge a presumption of law that the implicated act or omission of either party was prudent and cautious or negligent and wrongful, but the inference of negligence or its absence is an ultimate fact to be determined by the trial court or jury."

By statute (§2679 Burns 1908, Acts 1905 p. 584, §673) it is made a criminal offense for any person having charge of an interurban electric car, equipped with a whistle, to fail or neglect, when such car is approaching a road crossing, to sound the whistle at a distance of not more than one hundred nor less than eighty rods from the crossing. This case comes to us as one where the company failed to give any warning whatever, to persons intending to use the crossing at Thirty-eighth street, except the signal immediately before the collision. The company's failure to give the warning required constitutes negligence. *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 375; *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435; *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, 51 Am. Rep. 761.

It appears from the evidence that as decedent approached the crossing he was sitting near the center of the wagon, with the door to his left open, and was looking in the direction of the approaching car; that for some considerable distance before reaching the cross-

ing the car was not observable until a point eight or ten feet west of the track was reached; that when decedent reached that point his horses were actually upon the track, and the car was within three hundred feet of the crossing, running at the rate of thirty miles an hour. From this state of facts it follows that decedent had less than seven seconds to get out of the danger line. Had he stopped to look and listen, a collision would have been inevitable. He sought safety by trying to cross. In this he failed. Whether he acted as an ordinarily prudent person under all the circumstances, was certainly a question of fact for the jury, as was also the question whether he approached within an unsafe proximity to the railroad tracks without stopping to listen. *Malott* v. *Hawkins, supra; Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476, 483; *Indianapolis, etc., R. Co.* v. *McLin, supra.* He had a right to rely upon appellant's giving the crossing signal, which, if given, appellant's servants testified could have been heard a mile. While appellant's failure in this regard did not excuse decedent from the exercise of ordinary care for his safety (*Cleveland, etc., R. Co.* v. *Houghland* [1909], 44 Ind. App. 73), yet, in determining whether he used such care, his conduct should be considered along with that of appellant, and the circumstances there existing affecting the probability or improbability of his seeing the car approaching had he looked, or hearing it had he listened, and the possibility of his being misled into a situation of danger, and from which he was unable to extricate himself in time to avoid injury.

In the case of *Malott* v. *Hawkins, supra,* it is said: "A further proposition, based on the reciprocal rights of the railway company and a traveler at a public crossing, is that after a traveler has vigilantly used his senses to avoid danger, as stated above, and is unable to see or hear any approaching train, he may, while still exercising due care, assume that the company will not omit to give the usual,

and especially the statutory signals, if a train is really approaching. * * * The omission to give signals may, therefore, be an element in determining the question of contributory negligence." See *Chicago, etc., R. Co.* v. *Ginther* (1911), 48 Ind. App. —.

This is not a case where the undisputed evidence shows that decedent by looking could have seen, or by listening could have heard the approaching car in time to avoid the collision. For that reason cases in which the conclusion rests upon the assumption that a traveler approaching the crossing actually saw what he could have seen had he looked, and heard what he could have heard had he listened, are not in point. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1911), 175 Ind. 161. After a careful consideration of the evidence in this case, we are not persuaded that reasonably fair-minded men would not honestly differ in their conclusions regarding the *quantum* of care which decedent should have exercised. The question submitted on the evidence is not one of law. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Evansville, etc., R. Co.* v. *Berndt, supra.*

Instruction six, given to the jury at the request of appellee, is questioned on the ground that it was misleading, and because it invaded the province of the jury. Neither of these objections can be sustained. Appellant has set out a part of the instruction, and then made an attack upon that part. The instruction must be considered as a whole, and when so considered there is no basis from which to argue that it attempts to determine the probative force of the evidence, or to assume any fact as proved. These were questions for the jury, and were left to the jury by the instruction.

Instruction seven was as follows: "The court instructs you that a plaintiff may recover damages for an injury caused by defendant's negligence, notwithstanding plaintiff's own negligence exposed him to the risk

of injury, if such injury was more immediately caused by defendant's omission after becoming aware of plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. And, in this case, if you shall find from the evidence that defendant's motorman in charge of defendant's car saw decedent in peril and great danger on defendant's track ahead of said car at the crossing of Thirty-eighth street and College avenue, and after seeing decedent's peril failed to exercise ordinary care under the circumstances to avoid injuring decedent, and decedent thereby received injuries, from which he died, as a proximate result of said want of care on the part of defendant, then your verdict should be for the plaintiff, notwithstanding decedent's want of ordinary care brought him into such position of peril."

This instruction is criticised on the ground that it brings into the case the doctrine of "last clear chance" without a complaint or facts adduced at the trial to warrant it. To support the instruction, we are referred to that part of the complaint, which, after alleging the negligence of appellant in several particulars, especially in failing to give the statutory crossing signal, reads as follows: "That when her said decedent was upon said crossing as aforesaid, defendant negligently ran one of its cars toward and onto said crossing at a high and dangerous rate of speed, and did negligently so run said car against said horses and wagon of plaintiff's decedent on said crossing, and did thereby negligently knock plaintiff's decedent out of said wagon, and crush and destroy said wagon, and did thereby inflict mortal injuries upon the body of plaintiff's said decedent as aforesaid, from which he died as aforesaid on December 5, 1906."

It will be noticed that this complaint contains no direct allegation showing that appellant was aware of decedent's danger in time to stop the car and avoid the injury. It is alleged that "defendant negligently ran one of

its cars toward and onto said crossing at a high and dangerous rate of speed, and did negligently so run said car against the said horses and wagon of plaintiff's decedent on said crossing," etc.

In the case of *Indianapolis St. R. Co.* v. *Marschke*, *supra*, the court had before it the same question we are now considering, and presented in the same way. In disposing of the question it was said: "Appellee had a right, having offered evidence in support of the gist of her charge, to have the question of negligence submitted to the jury, either as she had characterized it or in accordance with the gravamen of the allegation."

In the case of *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 7 L. R. A. (N. S.) 143, the same question arose on the answers of the jury to interrogatories. In that case it was said: "It is no departure from just principles, but a wholesome and humane doctrine, to hold, that if after the defendant knew, or in the exercise of ordinary care ought to have known, of the plaintiff's negligence, he could have avoided the accident, but failed to do so, the plaintiff can recover."

The doctrine announced in the two cases last cited, when applied to the complaint and evidence before the jury in the case at bar, leads us to conclude that appellant's contention cannot be sustained. We have referred to the allegation in the complaint which has been held to authorize the admission of evidence justifying the instruction. The evidence shows that the car was 300 feet away from the crossing when the motorman discovered that appellee's decedent would attempt to drive across the track. The motorman testified that the horses were near the track and going toward the track, and decedent was not looking toward the car. Other witnesses testified that when the car was 300 feet from the crossing the horses were on the track, the decedent was looking toward the car and driv-

ing east across the track. The car was moving at the rate of thirty miles an hour, and the horses were walking. From this state of the evidence a collision was evident, unless the speed of the car was materially and noticeably reduced. There was evidence before the jury that the speed of the car was not reduced until after, or about the time of, the collision. If the jury believed that there was no attempt to stop the car until after the accident, and the car was actually stopped within one hundred twenty-five or one hundred fifty feet after the collision, it might readily conclude that, by the exercise of ordinary care, the accident could have been avoided. In any event, the evidence justified the instruction, and the court committed no error in giving it. See, also, *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617; *Southern Ind. R. Co.* v. *Drennen* (1909), 44 Ind. App. 14. Judgment affirmed.