## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* VAN LANINGHAM.

[No. 7,488. Filed February 14, 1912. Rehearing denied June 18,
1912. Transfer denied January 22, 1913.]

1.  PLEADING.—*Demurrer.—Admissions.*—On demurrer to a com-
    plaint, all the material facts that are well pleaded must be taken
    as true for the purposes of the demurrer. p. 163.
2.  RAILROADS. — *Crossing Accident. — Contributory Negligence. —
    Complaint.*—Where, in an action for the death of plaintiff's de-
    cedent, in a railroad crossing accident, the conclusions to be
    drawn from the allegations of the complaint, with reference to
    decedent's conduct in approaching the crossing, lead to no other
    legitimate inference than that decedent was guilty of contributory
    negligence, the existence of such contributory negligence will be
    determined as a matter of law, but if the allegations are such
    as might properly cause reasonable men to differ as to the exist-
    ence of such negligence on the part of decedent, the question is
    for the jury. p. 163.
3.  NEGLIGENCE.—*Complaint.—Demurrer.—Contributory Negligence.
    —Presumptions.*—On demurrer to a complaint in a negligence
    case, it will be considered that plaintiff used due care, unless all
    reasonable inferences drawn from the facts alleged show that
    he was guilty of negligence as a matter of law. p. 163.
4.  RAILROADS. — *Crossing Accident. — Contributory Negligence. —
    Complaint.*—A complaint to recover for the death of plaintiff's
    decedent in a railroad crossing accident, alleging that decedent
    was sixty years old and had good hearing and eyesight, that
    when about 100 feet from the crossing he stopped and looked
    and listened for an approaching train, and, neither seeing nor
    hearing any, he proceeded toward the crossing, that, from the
    point where he stopped to a point five feet from the tracks, he

NOVEMBER TERM, 1912.        157

Cleveland, etc., R. Co. *v.* Van Laningham—52 Ind. App. 156.

could not see an approaching train because of obstructions which defendant negligently permitted to exist, that defendant negligently failed to give any signal or warning of the train's approach to the crossing by sounding the whistle or ringing the bell, and that the train was negligently run at a high rate of speed over said crossing, thereby causing the death, does not show contributory negligence as a matter of law and is sufficient to withstand a demurrer. pp. 164, 165.

5. RAILROADS. — *Crossing Accident. — Contributory Negligence. — Failure to Look and Listen.*—One, who, on approaching a railroad track fails to look and listen for an approaching train, is guilty of negligence as a matter of law. p. 164.

6. RAILROADS. — *Crossing Accident. — Contributory Negligence. — Jury Question.—Looking and Listening.*—Where a person, on approaching a railroad crossing, looked and listened in good faith, the question of whether he looked and listened enough is for the jury. p. 164.

7. RAILROADS.—*Crossing Accident.—Care by Persons Approaching Crossings.*—A person approaching a railroad crossing is required to use only ordinary care to avoid injury, and while he is required to use every reasonable precaution and to look and listen for an approaching train, he has a right to rely on the railroad company performing its duty and is not bound to anticipate that it will fail to give proper warning of the approach of its train. p. 164.

8. TRIAL.—*Verdict.—Answers to Interrogatories.*—A general verdict is overcome by answers to interrogatories only when they exclude every reasonable hypothesis consistent with the verdict which might have been proven under the issues. p. 166.

9. RAILROADS. — *Crossing Accident. — Contributory Negligence. — Verdict.—Answers to Interrogatories.*—In an action against a railroad company to recover for the death of plaintiff's decedent in a crossing accident, answers to interrogatories showing decedent was familiar with the crossing, that he stopped, looked and listened before approaching the same, that from where he stopped to a point within five feet of the track he could not have seen the approaching train, that when decedent arrived at the point in the highway where he could see the train he could not stop his horse in time to avoid injury, and had not space enough in which to turn the horse around, and that the whistle was not sounded until the engineer saw decedent crossing the track, do not show that decedent failed to use ordinary care and are not in conflict with the general verdict for plaintiff. p. 166.

10. RAILROADS. — *Crossing Accident.— Instructions. — Last Clear Chance.*—In an action against a railroad company for the death of plaintiff's decedent in a crossing accident, where there was

evidence that the engineer saw the decedent when he was some distance from the railroad, that decedent then disappeared behind an embankment which prevented decedent from seeing the train and hid him from the engineer's view, and that the engineer next saw the horse appear about fifteen feet from the track, an instruction that where a person traveling on a highway, and a train are each approaching a crossing under circumstances indicating if neither stops a collision is likely, the engineer, if he has signalled the approach of the train, has a right to presume that such person will stop and to proceed with the train until he sees that such person does not stop, and if, after making such discovery in time to stop the train and avoid a collision, his failure to do so will render the company liable for the resulting injury, was a proper instruction and applicable to the evidence, even under the view that the engineer was not bound to use the last clear chance to avoid accident until he saw the horse emerging from behind the embankment.    pp. 167, 168.

11.  RAILROADS.—*Crossing Accident.—Issues.—Last Clear Chance.— Complaint.*—A complaint, in an action for the death of plaintiff's decedent in a crossing accident, averring that the servants of defendant carelessly and negligently caused the train to strike decedent, while knowing that he did not and could not know of the approach of such train, is sufficient to bring into the case the doctrine of last clear chance.    p. 167.

12.  TRIAL.—*Instructions.—Negligence.*—Instructions on the question of negligence should apply only to the negligence charged in the complaint, where the acts charged are definite and specific. p. 169.

13.  TRIAL.—*Instructions.—Refusal.*—The refusal of requested instructions on questions fully covered by the instructions given, is proper.    p. 169.

14.  RAILROADS.—*Crossing Accident.—Action.—Burden of Proof.*— In an action to recover for the death of plaintiff's decedent in a railroad crossing accident, plaintiff has the burden of showing negligence as charged, and the burden of showing contributory negligence by the decedent is on defendant.    p. 169.

15.  APPEAL.—*Review.—Evidence.—Verdict.*—The verdict for plaintiff in a negligence case will not be disturbed on the evidence, on appeal, where such evidence is conflicting on the question of defendant's negligence, and does not show contributory negligence as a matter of law.    p. 169.

16.  DEATH.—*Damages.—Excessive Damages.*—In an action for death against a railroad company, where decedent was sixty-two years old, able-bodied, living with and supporting his wife and daughter, and had a life expectancy of thirteen and one-half years, a verdict for $5,200 will not be held excessive, where there

is no showing that the jury adopted an improper method of calculating the damages, or was misled by sympathy, or influenced by unfair means. p. 170.

From Johnson Circuit Court; *W. E. Deupree,* Judge.

Action by Carl Van Laningham, administrator of the estate of Cassius C. Van Laningham, deceased, against The Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John W. Kern* and *L. E. Slack,* for appellant.
*Clarke & Clarke,* for appellee.

IBACH, P. J.—This was a suit brought in the Superior Court of Marion County by appellee as the administrator of the estate of Cassius C. Van Laningham, on account of the death of his decedent, which it is averred in the complaint was caused by the negligence of appellant in running one of its passenger-trains upon decedent at a highway crossing in Marion county. The venue was subsequently changed to Johnson county, where the cause was tried. The amended complaint on which issues were joined was in two paragraphs. A demurrer to each paragraph for want of facts was overruled, exceptions were taken and answer filed. Trial by jury resulted in a verdict for appellee, assessing damages at $5,200. With the general verdict were returned answers to certain interrogatories. Appellant's motion for judgment on these answers was overruled, and judgment rendered on the verdict.

The errors assigned call in question the action of the trial court in overruling appellant's separate demurrers to each paragraph of the amended complaint, and in overruling appellant's motions for judgment on answers to interrogatories, and for a new trial.

The first paragraph of complaint sets out the following alleged facts: Plaintiff is the administrator of the estate of Cassius C. Van Laningham. Defendant is a railroad corpo-

ration, owning and operating a line of railroad passing through the towns of Lawrence and Oaklandon, in Marion county, Indiana. The course of said railroad from Lawrence to Oaklandon is straight. One mile west of Oaklandon is a railroad crossing known as Springer's Crossing, where said line of railroad tracks crosses a public highway at an angle of about 45 degrees east, which highway had been opened for many years prior to the construction of the railroad, and is used extensively by the traveling public. Southwest of Oaklandon, for about three-quarters of a mile, defendant's tracks go down grade until they cross a creek, then ascend gradually, and where they intersect said public highway they are about 10 or 15 feet below the original grade of the highway. The grade of the highway has been lowered to correspond to that of the railroad, and in lowering the highway grade north of the railroad defendant carelessly and negligently failed to remove the embankment thus caused east of the highway and adjacent to the tracks within its right of way. Defendant and others erected along and near the railroad tracks a large number of telegraph and telephone poles. A person approaching the track from the north, walking, or driving in a buggy or wagon, cannot see defendant's tracks or a train thereon to the east of said highway at any time until he is within 5 feet of said railroad, owing to the presence of said embankment and poles. A person in a buggy or wagon passing along said highway in said cut going south cannot hear a train approaching at any time until within 5 feet of said tracks, unless a good and sufficient whistle is loudly sounded before said train reaches said crossing and within 100 rods thereof, and unless the bell on the locomotive drawing such train rings continuously immediately before reaching said crossing, to indicate the approach of the train, or other proper and necessary signals are made indicating the approach of a train on said railroad. On December 18, 1907, plaintiff's decedent, a man of sixty years, of good health, good hearing

and eyesight, was passing south on said highway towards his home, which is situated about one-half mile south thereof. When he came to a place about 100 feet from the railroad tracks he stopped his horse, which he was driving to a buggy, and looked and listened. He did not see any train approaching, owing solely to the presence of said embankment and said poles, which obstructed his view. A line of interurban tracks parallels the railroad tracks at this place, and is separated therefrom by a high embankment. After decedent stopped, as related, an interurban car passed said crossing. Decedent drove on towards the south in said cut, and from where he could not see said railroad tracks and a train thereon to the east. Owing to said embankment, poles and wires, said decedent while so driving, could know of the approach of a train on said railroad only when a good and sufficient whistle on said locomotive was sounded and a bell rung continuously. When said decedent was within about five feet of said tracks he first saw and heard a train approaching from the east, but it was then too late to escape by any other means except by driving across said tracks. While decedent was attempting to escape, a train owned, operated and controlled by defendant ran into and against him, knocking and hurling him, his wagon and his horse for 100 feet, and so bruising and wounding decedent that he died a few minutes thereafter. The engine which struck and killed him was owned and operated by defendant, and in charge of one of its agents and employes, and such employe in charge of the engine carelessly, negligently and unlawfully failed and neglected to sound the engine whistle at a distance of not more than 100 and not less than 80 rods from such crossing, and negligently and carelessly failed to ring the bell on the locomotive continuously for at least 80 rods immediately before crossing said highway. Said acts of neglect and failure are the sole, immediate and direct cause of decedent's death. Then follow the aver-

ments as to those dependent on decedent, and judgment for $10,000 is asked.

The second paragraph is similar to the first, except that in this paragraph defendant is charged with negligence in allowing a pile of dirt, described as from 12 to 15 feet high, 30 feet wide, and 100 feet long, to remain adjacent to its right of way, so as to cause the obstruction of the view of the railroad tracks and trains thereon to persons using said highway. Defendant and its servants well knew the condition of said crossing, and knew that persons along the highway passing through said cut could not see or hear a train approaching on account of the embankment, poles and wires, unless such servants sounded loudly the whistle of the locomotive within a proper distance, and caused the bell on the locomotive to be rung continuously, and made such other noises, alarms or signals in such a manner that one within said cut would know or have the means of knowing of the approach of said train, and although defendant, its agents and servants knew these facts, they carelessly and negligently failed to erect alarm bells and signals at said crossing, and its agents and servants in charge of such locomotive negligently and carelessly failed to sound the whistle of said locomotive, to ring continuously the bell thereon, or give other signals or warnings of the approach of said train in such a manner and at such a time that plaintiff's decedent while using said crossing as aforesaid could be warned of the approach of such train in time to avoid injury therefrom, and such servants and agents of defendant carelessly and negligently caused said train to approach and dash over said highway at the rate of a mile a minute, without giving warning, as aforesaid, and to strike and hurl decedent and carry him along with said train for one-half mile or more, while knowing that he did not and could not know of the approach of such train. That such acts of negligence on the part of defendant's servants directly, proximately and solely caused decedent's death.

It is claimed by appellant that each paragraph of the complaint is bad because it affirmatively appears from the averments thereof that plaintiff's decedent was guilty of contributory negligence.   By appellee it is insisted that whether decedent's conduct under the conditions averred as existing at the crossing at the time of the accident amounted to contributory negligence, was a question of fact for the jury, and not one of law for the court.

Since each paragraph of the complaint is tested by demurrer, all the material facts, which are well pleaded, regarding the conduct of decedent while approaching the crossing in question, together with the conditions adjacent to the crossing and the character thereof at the time decedent was killed, must be taken as true for the purposes of the demurrer.   If the conclusions which we are forced to draw therefrom lead to but one legitimate inference, and that is that appellant by his own negligence materially contributed to bring about the accident complained of, it then becomes our duty to determine decedent's contributory negligence as a matter of law. *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 223, 74 N. E. 1081; *Indianapolis St. R. Co.* v. *Bolin* (1906), 39 Ind. App. 169, 78 N. E. 210.   If, on the other hand, from the facts alleged it can be said that reasonable men might properly differ as to whether decedent was guilty of such conduct as to contribute to his own injury and death, then the question cannot be decided as a matter of law, but is a fact for the jury to determine under proper instructions from the court.   The plaintiff will be considered to have used due care unless all reasonable inferences drawn from the facts alleged show that he was guilty of negligence as a matter of law. *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 30 N. E. 37; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39, 34 N. E. 714.

It will be observed that the complaint alleges that de-

cedent at the time of the accident was a man 60 years old, having good hearing and eyesight; that while attempting to cross appellant's railroad tracks in his buggy he approached the highway crossing from the north, and when about 100 feet from the crossing he stopped his horse and looked and listened for an approaching train, but was unable to see or hear one, he then proceeded to drive toward the crossing, but could not see an approaching train while driving from the point where he stopped until he arrived at a point five feet from appellant's tracks, wholly on account of a high bank of earth and poles which appellant had negligently allowed to be there. It is averred, in addition to this act of negligence relative to the obstruction of his view, that appellant negligently failed to give any signal or warning of the approach of the train, by sounding the whistle or ringing the bell in the manner, and within the distance from such crossing required by statute, when it knew that plaintiff, on account of said high embankment which obstructed his view, could not know of the approach of a train when the whistle was not blown or the bell rung, and that the train was negligently run at the high and dangerous rate of speed of a mile a minute over said crossing and against decedent, and he was thereby killed.

When a person before attempting to cross a railroad track does not heed the danger of his situation, and fails to look and listen for an approaching train, he is guilty of negligence as a matter of law, but when such person looks and listens in good faith, the question whether he looked and listened enough is for the jury. The law requires such person to use ordinary care to avoid injury. Nothing more is required of him.

While a traveler on a public highway on approaching a railroad crossing is required to use every reasonable precaution and keep a lookout and to listen

attentively for an approaching train, still he is not bound to anticipate that any railroad company will be so reckless and so unmindful of its duty as to fail and neglect to give the signals and alarms as required by law to warn all travelers approaching any of its crossings, and whose danger is increased by reason of such neglect on its part, but rather he may rely on the railroad company performing its duty.

The averments in the complaint before us concerning the negligence on the part of defendant company in approaching and passing over the crossing in question, together with the other facts appearing in the complaint, are such that we cannot say that he did what no ordinarily prudent person would do. The complaint is sufficient.

The author in Wharton, Negligence (2d ed.) §804, says: "Even where a statute is in force requiring the use of a bell or steam whistle or other signal at a crossing, while the omission to comply may, under the statute, create a *prima facie* case against the company, it is a good defense that the plaintiff saw the train, and recklessly exposed himself to the collision. When, however, the injury results from the omission of the signals, then the railroad is liable."

The Supreme Court of this State in considering a complaint somewhat like the present said: "The signal required by law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods of the crossing; he was misled by the defendant's negligence in omitting the proper signal, he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods." *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476, 483. See, also, *Tabor* v. *Missouri Valley R. Co.*, (1870), 46 Mo. 353, 2 Am. Rep. 517; *Louisville,*

*etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 583, 51 N. E. 128; *Chesapeake, etc., R. Co.* v. *Steele* (1898), 84 Fed. 93, 29 C. C. A. 81.

It is assigned as error that the court erred in overruling appellant's motion for judgment on the answers to interrogatories. A general verdict is overcome by answers to interrogatories only when such answers exclude every reasonable hypothesis consistent with the verdict which might have been proven under the issues. *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, 61 N. E. 722; *Harmon* v. *Foran* (1911), 48 Ind. App. 262, 94 N. E. 1050, 95 N. E. 597.

By its answers to the interrogatories the jury found that decedent was of good hearing and good eyesight; that he was familiar with the crossing; that he stopped, looked and listened before crossing the interurban track; that if he had stopped afterwards at any time before reaching a point where his horse's head was within five feet of the tracks he could not have seen the approach of the train which struck him; that the embankment immediately east of the highway entirely cut off the view of an approaching train; that the engineer failed to sound the whistle or ring the bell until with 150 feet or 200 feet of the crossing; that when decedent reached a point in the highway where he could see the train approaching on defendant's tracks he did not have time enough to stop his horse, nor was there space enough in the highway to turn his vehicle with safety, and thereby avoid a collision; that the first whistle which was sounded for the crossing where decedent was struck was the stock alarm or distress signal, sounded after the engineer had seen decedent crossing the tracks. These answers do not show that decedent failed to use ordinary care in approaching the crossing and in attempting to drive over the same. The general verdict finds that due care was used by him in that respect, and the answers specially made do not exclude the existence of suffi-

cient circumstances which justify the conclusion reached. The court was right in overruling the motion for judgment on the answers to interrogatories.

Error has been assigned in refusing to give to the jury certain instructions requested by appellant and in giving others on the court's own motion, and at the request 10. of the appellee. In view of the conclusion reached, it will be unnecessary to discuss all the instructions covered by these assignments. The one to which the strongest objection is made, is instruction No. 1 given at appellee's request, which is as follows: ''If a train of cars hauled by a locomotive engine upon a railroad, and a citizen traveling in a buggy upon a public highway are both approaching a crossing of such highway with such railroad, under circumstances indicating that a collision between them is likely to occur if they both proceed upon their way without stopping, the engineer in charge of such train, if he has sounded the required signals with the engine whistle, and in ringing the bell of the engine, has a right to presume that the citizen will stop before he drives upon the crossing, and has a right to proceed on his way with his engine and train, until he discovers that the citizen does not stop. And if the engineer makes the discovery that the citizen does not stop, in time to stop his train and avoid the collision, and if after making such discovery, the engineer could have stopped his train, but did not do so, then in that view of the case the railroad company would be liable for the injury inflicted upon the citizen by such collision.'' This instruction was based on the theory that appellant's engineer saw decedent in a dangerous position, and was negligent in failing to slow down or stop his train. The averments of the 11. complaint characterizing the manner in which it is claimed the accident occurred are sufficient to bring into the case the doctrine of last clear chance, for it is averred ''that the servants * * * of defendant carelessly and negligently caused said train to strike * * *

168     APPELLATE COURT OF INDIANA,

Cleveland, etc., R. Co. *v.* Van Laningham—52 Ind. App. 156.

decedent while knowing that he did not and could not know of the approach of such train." *Indianapolis Traction, etc., Co.* v. *Croly* (1913), —— Ind. App. ——, 96 N. E. 973; *Evansville, etc., Traction Co.* v. *Johnson* (1913), —— Ind. App. ——, 97 N. E. 176; *Indiana Union Traction Co.* v. *Myers* (1911), 47 Ind. App. 646, 93 N. E. 888.

This instruction was based on the testimony of the engineer that he saw decedent before he crossed the interurban track, and that when he crossed such track he disappeared from sight behind the embankment; that he next saw the head of the horse emerge from behind the embankment, and then the buggy came into view, and he could see the lines going up and down as if the driver, whom he did not see, was urging the horse. He says that he saw the horse about fifteen feet from the track, when he first realized that decedent was attempting to cross, and was making no attempt to stop.

We cannot say from the engineer's evidence, that at this time, when he says he first realized that decedent was not going to stop, he could not have stopped his train in time to avoid the accident, or checked its speed to such an extent that decedent would have passed on over the track unhurt. Although the engineer states that he did what he could to stop the train, yet this was to be considered in the light of his testimony as to surrounding conditions, and it was for the jury to say whether the conditions were such that on seeing the horse emerge from behind the bluff the engineer still should have been able to avoid the accident, in view of his testimony as to the distance the horse was from the track and the train from the crossing, and the further fact that the horse passed over the track in safety, while the buggy was struck by the train. We consider the instruction applicable to the evidence offered by the engineer, even taking the view that the engineer was not bound to use the last clear chance to avoid accident until he saw the horse emerging from the cut.

It cannot be said as a matter of law that the engineer did not see decedent in a place of danger, or entering into a place of imminent danger, until after it was too late to check or stop the train. When he saw decedent pass from view behind the embankment, it then became the engineer's duty to exercise that ordinary care and prudence which the law imposed on him under the circumstances as they were shown by the evidence in the case to exist at the time of the accident. While we do not commend the language of the instruction generally, and can see where the same might be found to be even erroneous in certain cases when there were no obstructions to hide an approaching train, yet under the facts as disclosed by the record before us we must conclude that the instruction was as favorable as appellant could ask, and that no error was committed in submitting instructions embodying the doctrine of last clear chance.

In considering error assigned in giving certain other instructions, it is sufficient to say that the acts of negligence charged against the railroad company were definite and specific, and the instructions given on the question of appellant's negligence should have applied only to the negligence charged in the complaint; but in view of all the instructions given, we cannot find reversible error in the giving of the instructions criticised.

Other instructions asked by appellant were rightly refused, because the same questions were covered by instructions given, and the jury was fully informed on the issue of contributory negligence.

It is assigned that the evidence is not sufficient to sustain the verdict. It is admitted that the train which ran upon and over decedent was a train of appellant, and was being operated by its employes. There is a conflict as to whether the whistle was sounded or the bell rung before reaching the crossing, as provided by statute. The burden of showing negligence on the part of appellant, as charged, was on appellee, and the bur-

den of showing contributory negligence on the part of decedent was on appellant. It seems, under the decisions, that the issue of contributory negligence in cases where the facts are similar to those in the present is left to the determination of the jury, and the questions both of the negligence of appellant and the lack of contributory negligence of decedent were determined by the jury in favor of appellee. The evidence is quite voluminous, and its sufficiency not free from doubt. Without setting it out, we feel justified in saying, after having carefully reviewed it, that it would be error to say as a matter of law that decedent was guilty of contributory negligence.

It is also claimed by appellant that the damages assessed are excessive. The evidence shows that decedent was sixty-two years old, able-bodied, living with and supporting his wife and daughter. His expectancy of life was $13\frac{1}{2}$ years. There is nothing to show that the jury adopted an improper method of calculating the damages, or was misled by sympathy, or influenced by unfair means, and the amount, though large, is not so large that we can say that it abused its discretion. Therefore, we would not be authorized to reverse the judgment on this ground.

Judgment affirmed.

NOTE.—Reported in 97 N. E. 573. See, also, under (1) 31 Cyc. 333; (2) 33 Cyc. 1111; (3) 29 Cyc. 596; (4) 33 Cyc. 1060; (5) 33 Cyc. 1000; (6) 33 Cyc. 1116; (7) 33 Cyc. 1027; (8) 38 Cyc. 1927; (9) 33 Cyc. 1142; (12) 38 Cyc. 1612; (13) 38 Cyc. 1711; (14) 33 Cyc. 1066, 1070; (15) 3 Cyc. 348; (16) 13 Cyc. 375. As to the duty of travelers on highways to use their senses to avoid accidents at railroad crossings, see 90 Am. Dec. 780. As to the presumption of the exercise of care, see 116 Am. St. 108. As to the presumption of negligence from the happening of an accident, see 113 Am. St. 986. As to what is an excessive verdict in an action for death by wrongful act, see 18 Ann. Cas. 1209. As to the failure to give customary signals as excusing nonperformance of duty to look and listen, see 3 L. R. A. (N. S.) 391. On the duty of traveler approaching railway crossing as to place and direction of observation, see 37 L. R. A. (N. S.) 136.