SCOOPMIRE *v.* TAFLINGER ET AL.

[No. 17,147. Filed February 1, 1944.]

420

*Hugh D. Wickens* and *Hubert E. Wickens,* both of Greensburg (*E. J. Morrison* and *George B. Hall,* both of Greensburg, of counsel) for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General (*W. H. Dobbins* and *Julián Sharpnack,* both of Columbus, of counsel) for appellees.

CRUMPACKER, C. J.—This action was commenced in the Ripley Circuit Court by the appellant Joseph H. Scoopmire against the appellees Warren A. Taflinger and Joseph Schuerman to recover damages for false arrest and imprisonment. The case was venued to Bartholomew County and tried to a jury in the circuit court. After the appellant had rested his case in chief, the appellee Schuerman moved the court to instruct the jury to find in his favor and to return a verdict accordingly. This motion was sustained, the jury was so instructed and so did and the trial proceeded as to the appellee Taflinger. A verdict was returned favor-

able to said appellee also and, over the appellant's motion for a new trial, judgment was rendered against him and this appeal perfected. The sole error assigned is in overruling the motion for a new trial which questions (1) the sufficiency of the evidence to support the verdict, (2) the legality of the verdict, (3) the refusal of the court to give certain instructions tendered by the appellant and the giving of certain others, including the peremptory instruction in favor of the appellee Schuerman, over his objection, and (4) the admission and rejection of certain evidence.

An assignment of error to the effect that the verdict of the jury is not sustained by sufficient evidence presents no question for review when the verdict involved is negative. *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. —, 51 N. E. (2d) 474; *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. (2d) 905. The reason for this rule is obvious as a verdict unfavorable to the party having the burden of proof does not rest upon the persuasiveness or *quantum* of the evidence against him but rather upon his failure to sustain the burden of establishing his own case by a preponderance of the evidence.

The essential facts in this case are undisputed and sum up to this: The appellant was arrested by the appellee Taflinger, a State police officer, under the mistaken belief that he was an escaped inmate of the Muscatatuck Colony for Feebleminded at Butlerville. Escapes or "wanderings off" from said colony were not infrequent and when occurring were reported to the state police barracks at Seymour. A day or two prior to the appellant's arrest such an escape had occurred and all patrolmen working out of the Seymour office, including the appellee Taflinger, had been instructed to be on the lookout for such inmate and upon his

apprehension to return him to the Muscatatuck Colony or to detain him until such time as a representative of such colony could do so.

When first seen by the appellee Taflinger the appellant, answering somewhat the description of said escaped inmate, was walking east on State Highway 50 at a point about five miles east of Butlerville. The said appellee, believing the appellant to be the man he was looking for, asked him if he wanted to ride, and thereupon the appellant voluntarily got into the said appellee's car and they proceeded east toward the town of Holton where the appellant lived. In the course of their conversation the appellant told said appellee his name and that he resided in said town of Holton; but without making any effort to verify this information said appellee drove directly through Holton and at the same time informed the appellant that they were going to Versailles to see the appellee Schuerman, the sheriff of Ripley County, and that they would return to Holton later, to which the appellant acquiesced. On reaching Versailles the appellee Taflinger parked his automobile near the county jail and the appellant, believing that he was about to make a social call on the sheriff, accompanied the said Taflinger into said jail where he was locked in a cell and there imprisoned for a period of several hours.

At the time the appellant was so imprisoned the appellee Schuerman was not present and the jail was in the temporary control of his wife, who was then acting as his duly authorized deputy. As such deputy, however, Mrs. Schuerman took no active part in the incarceration of the appellant further than giving the cell block keys to the appellee Taflinger. The appellee Schuerman, upon his return to the jail, recognized the appellant and knew he was not an escaped inmate of

the Muscatatuck Colony but neither released him nor made any effort to procure his release further than to notify the appellee Taflinger that the appellant was not the man he wanted. Several hours later the appellee Taflinger returned to the jail, released the appellant and took him home. At the time of the events above narrated the appellant was a man 40 years old. His mental development had been arrested at an early age and, as a result thereof, he had never been able or permitted to engage in steady employment. He lived with his parents and was supported by his father, a retired railroad man, but was at liberty to go and come during the daytime as he pleased. His health was not robust in that he was very nervous and suffered from asthma and hay fever.

On the above facts, which rest upon testimony corroborated in the main by appellees themselves, there can be no doubt that the appellant was falsely arrested and imprisoned. He had committed no crime nor was he even suspected of doing anything further than having escaped from the Muscatatuck Colony which, being no crime, did not warrant his confinement in the county jail even if guilty, nor is there any evidence that his mental condition was such that he was dangerous when at large either to himself or others. A jury composed of reasonable men, if properly instructed as to the law applicable to the situation, could come to no other conclusion. Was it error, then, for the court to instruct the jury to find for the appellee Schuerman, the sheriff, and to return a verdict accordingly? Section 47-831, Burns' 1940 Replacement, § 15313-12, Baldwin's 1936 Supp., pertaining to the department of State police, provides as follows:

"Any person having charge of a jail, prison or reformatory or other place of detention shall re-

ceive any prisoner arrested by a police employee of the department within the jurisdiction served by such jail, and shall detain him in custody until otherwise ordered by a court of competent jurisdiction, or by the superintendent; and such person who shall refuse to so receive any prisoner or who, having received him, shall release him otherwise than as above specified, shall be subject to removal from office by the governor." Acts 1935, ch. 299, § 17, p. 1463.

It is appellee Schuerman's contention that, under the circumstances of this case, the above statute imposed upon him, as sheriff of Ripley County and keeper of its jail, a clear and unequivocal duty to receive the appellant and detain him in custody until discharged in the manner therein provided, and that no liability for false imprisonment can result from his obedience to a plain legislative mandate. On the other hand the appellant takes the position that, if said statute is to be so construed, it is unconstitutional because, to quote from his brief, "it would violate the provisions of the constitution regarding freedom from arrest, and would give the state police arbitrary and unlimited authority over and above the courts and would leave the constitutionally elected sheriff subject to the whims and caprices of any state policeman who saw fit to bring a man to jail, without or with warrant of law, this even when the sheriff knew the detention was wrongful."

Neither in his brief nor in oral argument has the appellant specifically indicated what provisions of the State or Federal constitution will be violated if the statute in question is given the literal construction its language seems to indicate, and it appears to us that his objection to the statute is not to its constitutionaliy but rather to the effect that it is an unreasonable exercise of the police power of the State, the indirect result of which is to abolish or

destroy a remedy for a wrong he has suffered. At most this statute does nothing more than relieve anyone charged with the custody of a jail, prison or reformatory from responsibility to persons committed and detained therein at the request of an employee of the department of State police. Its effect is such that, if the imprisonment proves to be false and illegal, redress against the jailer is denied and any remedy the aggrieved person may have must be enforced against the employee of said department who initiated the wrong. It is true that at common law every right, when invaded or withheld, must have a remedy, and every injury or violation of duty must have its proper redress by a suit in equity or by an action at law, yet private rights and remedies, when conflicting or repugnant to legislative enactment in the reasonable exercise of the police power of the State, must give way. The statute in question, as disclosed by its own terms, was enacted "to the end that the criminal laws may be efficiently enforced and offenders promptly and certainly apprehended." Section 47-832, Burns' 1940 Replacement, § 15313-13, Baldwin's 1936 Supp. The department of State police maintains no jails of its own, and it is evident that the Legislature intended to place county jails at the disposal of said department for the detention of prisoners arrested by its officers and to divest the sheriff of all discretion in connection with the receipt and discharge of such prisoners. The law thus imposes upon the department of State police, rather than upon the sheriff, the duty to go forward with the process of bringing the prisoner before a court and presenting him for arraignment and admittance to bail. In the meantime he remains the prisoner and in the custody of said department and not the sheriff. All rights to liberty, if falsely imprisoned, are still his

and may be enforced as heretofore. He has lost nothing but his right to recover damages from the sheriff if that officer, except for the act, were liable therefor. The wisdom of this legislation is not for us to determine. We are convinced it is a reasonable exercise of the police power of the State and therefore valid. It was said in *Adams Express Co.* v. *State* (1903), 161 Ind. 328, 346, 67 N. E. 1033, "As the public peace, safety, and well-being are the very end and object of free government, legislation which is necessary for the protection and furtherance of this object cannot be defeated on the ground that it interferes with the common law rights of some of the citizens, or even deprives them of such rights." Both the Federal and State constitutions are living and growing documents. Within the limits necessary for the preservation of our form of federal and state governments and the basic principles upon which they rest, the constitutions of both state and nation must be construed to the end that public progress and development will not be stifled and that public problems, with their ever increasing complexity, may be met and solved to the best interests of the public generally. In these days of hard surfaced roads and easy means of rapid transportation a criminal may be, within an hour, 75 or 80 miles from the place where the crime was committed. Information concerning the crime and a description of the perpetrator is broadcast by radio and peace officers throughout the State are expected to make arrests upon such information. Having done so, any place of detention within the county where the arrest is made becomes available, under the statute in question, to the arresting officer for the safe keeping of the prisoner until he can be formally charged with crime or legally discharged. The Legislature has said that the mere presentation of

the prisoner by an employee of the department of State police is sufficient warrant for his acceptance and confinement by anyone in charge of a place of detention. The statute itself, coming from that branch of our government in which the very sovereignty of the people rests, becomes the *mittimus* as valid, it seems to us, as that of a court issued, as it frequently is, upon the *ex parte* representations of an individual.

The maxim that there is no wrong without a remedy does not apply to acts authorized by valid legislative enactment and performed in strict conformity with the provisions of such legislation. *Pietsch* v. *Milbrath* (1905), 123 Wis. 647, 101 N. W. 388, 68 L. R. A. 945; *Frazer* v. *City of Chicago* (1900), 186 Ill. 480, 57 N. E. 1055, 51 L. R. A. 306. The appellant still insists, however, that the act here involved is but one of many affecting the duties of sheriffs and that it must be construed in connection with the others and the decisions of the courts in respect thereto. This, of course, is true but to leave with the sheriff the responsibility and duty of determining the propriety of the receipt and discharge of a prisoner arrested and presented by a State police officer would destroy the very purpose of the act. It was the evident intention of the Legislature that such duty under such circumstances should not rest with the sheriff and it naturally follows that there can be no cause of action against a person who owes no duty in the premises. We are of the opinion that the peremptory instruction of which the appellant complains was properly given to the jury.

As to the appellee Taflinger the verdict is palpably contrary to law. As heretofore stated the essential facts pertinent to the appellant's arrest, largely corroborated by the admissions of said appellee, show such arrest to have been false. Said appel-

lee's sole defense was to the effect that, considering the orders under which he was working and the appearance of the appellant, the mistake he made was natural and plausible. The jury was instructed that such a defense could be considered only in determining the question as to whether said appellee's conduct was willful, reckless and oppressive and, if not found to be such, no punitive damages could be assessed. The instructions of the court clearly define false arrest and imprisonment and inform the jury as to what constitutes the same as a matter of law. These instructions, applied to the undisputed evidence, clearly required a verdict for the appellant and the assessment of damages in some amount against the appellee Taflinger. The jury's failure to so do can be explained only in the light that it found the appellant suffered no damage and, being uninstructed as to its duty to return a verdict for nominal damages under such circumstances, its verdict was for the appellee.

The appellant concedes that a negative judgment will not be reversed when the court is able to say, as a matter of law, that only nominal damages are recoverable, *Kalen* v. *Terre Haute and Indianapolis Railroad Company* (1897), 18 Ind. App. 202, 47 N. E. 694; *Browning* v. *Simmons* (1897), 17 Ind. App. 45, 46 N. E. 86; *Smith* v. *Parker* (1897), 148 Ind. 127, 45 N. E. 770, but contends that the uncontradicted evidence discloses that he suffered injuries for which he was entitled to recover something over and above mere nominal damages and therefore the above rule does not apply.

A general verdict against a party is a finding against him upon all issues of which he assumed the affirma-

tive. It is a final decision by the jury as to the truth of matters submitted to it and at issue between the parties. *Pethtel* v. *Pethtel* (1910), 45 Ind. App. 664, 90 N. E. 102; *Iowa Life Ins. Co.* v. *Haughton* (1910), 46 Ind. App. 467, 87 N. E. 702; *Indiana Union Traction Co.* v. *Myers* (1911), 47 Ind. App. 646, 93 N. E. 888; *Fidelity & Casualty Co.* v. *Huse & Carleton, Inc.* (1930), 272 Mass. 448, 172 N. E. 590, 72 A. L. R. 1143. As the issue of compensatory damages was submitted to the jury, we must assume that its finding on that issue was against the appellant. Where the evidence on an issue is wholly oral and undisputed, but uncorroborated by other evidence the jury considers credible, its acceptance is a matter for the jury notwithstanding the fact that it is undisputed and a verdict that in effect rejects such testimony is not contrary to law. *McKee* v. *Mutual Life Ins. Co., supra; Cleveland, etc., R. Co.* v. *Starks* (1915), 58 Ind. App. 341, 361, 106 N. E. 646; *Wm. P. Jungclaus Co.* v. *Ratti* (1918), 67 Ind. App. 84, 118 N. E. 966; *Nat. City Bank* v. *Kirk* (1926), 85 Ind. App. 120, 134 N. E. 772. The reason for this rule is aptly stated in *Cleveland, etc., R. Co.* v. *Starks, supra,* from which we quote as follows:

"The jury is the judge not only of the weight of the evidence, but also of the credibility of the witnesses. As the former rests upon the latter, in so far as concerns oral testimony, it follows that the evidence can not be intelligently weighed unless the credibility of the witnesses has first been determined. In fact, the evidence in a case, aside from the written or documentary, is gathered only from the credible oral testimony. When a material fact is supported only by the uncorroborated testimony of a single witness, there is no reason why the jury should not subject the credibility of such witness to proper tests, even though his testimony is not contradicted by that of any other witness. If, as

a result of such tests, honestly and fairly applied, the jurors are unable to believe the testimony of such witness, it is not only within their power, but also it is their duty, to reject it."

It thus becomes apparent that on the state of the record before us we are justified in saying, as a matter of law, that the jury's verdict should have been for the appellant in a nominal amount only and therefore the verdict returned, although technically contrary to law, will not be disturbed. As the trial court's instruction on compensatory damages is correct and in view of the jury's finding that the appellant suffered no damages, any error involved in other questions presented by the record becomes harmless.

Judgment affirmed.

Dowell, J., not participating.

Royse, P. J., dissenting with opinion.

NOTE.—Reported in 52 N. E. (2d) 728.

## DISSENTING OPINION.

ROYSE, P. J.—I cannot agree with the opinion or conclusion of the majority in reference to appellee Schuerman. If I believed this court had jurisdiction of this appeal I would agree with the majority as to appellee Taflinger. However, because of the interpretation placed by the majority on § 17, ch. 299, of the Acts of 1935, p. 1463, § 47-831, Burns' 1940 Replacement, I believe the jurisdiction of this case is in the Supreme Court. The appellant has, in my opinion, properly presented the question of the validity and constitutionality of this section, particularly when given the construction adopted by the trial court and approved by the majority decision of this court.

In the first place, I do not believe § 17, *supra,* has any application to the facts in this case. This section

is a part of the act creating the State police department. Section 18 of the same act (§ 47-832, Burns' 1940 Replacement), provides as follows: "This act shall be liberally construed, to the end that the *criminal laws may be efficiently enforced and offenders promptly and certainly apprehended.*" (My italics.) It is nowhere contended by any of the parties hereto that appellant was even suspected of having violated any criminal laws of this State. If the broad construction placed by the majority on this section can be justified (which I do not concede), then certainly it can only apply to the detention of persons either charged with or reasonably suspected of having violated a criminal law. In the instant case no such suspicion attached to appellant. Appellee Schuerman knew he was not an inmate of the Muscatatuck Colony, and despite that knowledge he detained him in jail for several hours.

Secondly, I do not believe it was necessary to place the broad construction on § 17, *supra*, which has been placed upon it by the majority to sustain the intent of the Legislature in enacting this section. It is an elemental rule of statutory construction that in considering the meaning of a particular section of a statute, the whole statute must be considered.

Section 14 of the Acts of 1935, ch. 299, p. 1463 (§ 47-828, Burns' 1940 Replacement), in defining the powers of the State police department, provides in part as follows: "police employees of the department shall be peace officers and shall have in any part of the state the same powers with respect to criminal matters and the enforcement of the laws relating thereto as sheriffs, constables and police officers have in their respective jurisdictions." This provision indicates to me that it was the legislative intent that the State police should have

only the same authority as that possessed by other constitutional and statutory law enforcement officers. Certainly it cannot be contended that law enforcement officers generally may arrest and detain a person indefinitely without legal process—particularly when they know that such person is guilty of no offense. Sections 48-6112 and 49-2802, Burns' 1933, provide under what circumstances an arrest may be made without a warrant, and that in such instances the arrested person must be taken before a magistrate or other judicial officer as quickly as is reasonably possible. In my opinion it was not the legislative intent to repeal these provisions protecting our citizenry from the arbitrary and capricious conduct of police officers when it enacted § 17, *supra.* I find support for my opinion in this regard in the recent decision of the United States Supreme Court in the case of *Benjamin McNabb, Freeman McNabb and Raymond McNabb, Petitioners,* v. *United States of America* (1943), 87 Law ed. 819, in which case it was held that evidence obtained against defendants while they were held by government officers without having been brought before a United States commissioner or judge, as required by law, was inadmissible because it was obtained in violation of the rights guaranteed to them by the Constitution. The opinion further pointed out the law of the United States and forty-four states was similar to the provisions contained in §§ 48-6112 and 49-2802, *supra.*

"As a general rule, unless a jailer has legal authority in the form of a valid written mittimus, he is liable for false imprisonment in detaining a prisoner beyond a reasonable time for procuring such authority." .22 Am. Jur., 366, 367, § 20. "The fact that a police officer making an unlawful arrest was acting under direct orders of his superior is not generally a defense to the

action" (action for false imprisonment). 22 Am. Jur. 417, § 96. "If the person arrested is detained or held by the officer for a longer period of time than is required under the circumstances, without . . . warrant or authority, he will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained." *Harness* v. *Steele, By Next Friend* (1902), 159 Ind. 286, 295, 64 N. E. 875.

Finally, I cannot agree with the majority that the construction they have placed on § 17, *supra,* is justifiable as a valid exercise of the police power. I have never understood that the police power of either the state or national government was superior to the Constitution which created such government. I recognize that it is a broad power. It is an inherent attribute of all governments. It has been said that it is the inherent power to enact laws, *within constitutional limits, to promote the order, safety, health, morals and general welfare of society.* 16 C. J. S. 537, § 174.

In 11 Am. Jur. 972, § 247, the following language of Chief Justice Shaw, used in the case of *Commonwealth* v. *Alger* (1851) (Mass.), 7 Cush. 53, 85, is quoted in defining the police power: "The power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, *not repugnant to the Constitution,* as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same." (My italics.) For numerous approvals of this definition, see n. 15 to the above quotation.

In the case of *Republic Iron & Steel Company.* v. *The State* (1903), 160 Ind. 379, 385, 66 N. E. 1005, in speaking of the police power, our Supreme Court said: "As far-reaching and flexible as the power has often

been held to be, it is nowhere claimed for it that it may override the Constitution, and strike down a right that has been solemnly and expressly guaranteed by the fundamental law." Again, in the case of *The State* v. *Gerhardt* (1896), 145 Ind. 439, 452, 44 N. E. 469, our Supreme Court declared, in reference to this power: "it cannot be invoked so as *to invade the fundamental rights of a citizen.*" (My italics.)

Our government is based upon the ideal that the individual possesses certain inalienable rights. Those rights are superior to the rights of the state except only where the exercise of such right would unjustly interfere with the rights of another individual or individuals, or where the curtailment or deprivation of such rights are clearly necessary for the protection of the general welfare of all the people. One of the most sacred of the inalienable rights of the individual citizen is his right to liberty—which includes immunity from the unlawful seizure and detention of his person by any agency of the state. Article 1, § 11, Constitution of Indiana. Can it be reasonably said that it is in the interest of the public welfare to empower any select group created by the Legislature to arrest a citizen without warrant or other legal authority, and that such select group can then require a constitutional peace officer to detain such individual even though such constitutional officer knows of his own knowledge that there is no legal cause or justification for such detention? Such an idea is contrary to my conception of our form of government. If there is such authority in the Legislature, then the Bill of Rights is a meaningless bit of rhetoric. The majority opinion says the Legislature has such authority. Such a construction, in my opinion, squarely presents a question of the validity and constitutionality of the act here considered. There-

fore, this case should have been transferred to the Supreme Court. Sections 4-214, 4-217, Burns' 1933.

NOTE.—Reported in 52 N. E. (2d) 728.