## SHAVER *v.* HOME TELEPHONE COMPANY.

[No. 5,421.   Filed October 6, 1905.]

1. MASTER AND SERVANT.—*Employers' Liability Act.—Due Care.* —Under §7083 Burns 1901, Acts 1893, p. 294, §1, the servant is bound to exercise due care and diligence in the service. p. 236.

2. SAME.—*Assumption of Risk.*—The servant assumes the risk of all obvious dangers in the scope of his employment. p. 237.

3. SAME.—*Order of Foreman.—Presumption.—Limits of Rule.*— The presumption is that the servant, acting under the orders of his foreman, will not, without notice, be subjected to injury, but this rule does not apply where the danger is obvious. p. 237.

4. PLEADING.—*Complaint.—Master and Servant.—Assumption of Risk.—Specific Allegations Controlling General.*—Where a complaint for damages on account of injuries by the falling of telephone poles shows that the master ordered the servant, in unloading a car of telephone poles, to cut the stay wire of a standard which held the poles on the car, such servant knowing the purpose thereof, and there was nothing to prevent his seeing the dangers connected therewith, and he was twenty years old and of average intelligence, such complaint is bad, though it contains a general allegation that plaintiff did not know of such dangers, that he was inexperienced, and that such facts were known to defendant. p. 237.

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Action by Earl T. Shaver against the Home Telephone Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Crane & McCabe,* for appellant.

*Finley P. Mount,* for appellee.

ROBINSON, J.—Appellant appeals from a judgment against him on a demurrer to his complaint asking damages for a personal injury. Appellant was working under the direction of a foreman, and was injured while unloading a carload of telephone poles. It is averred that the poles, from twenty-five to thirty-five feet long and ten to fifteen inches in diameter, were loaded lengthwise on a flat-car, piled up about eight feet high and held in place by wooden

standards at the sides of the car. These standards were placed three on each side of the car, one at the middle and one near each end, and were stayed in pairs with wires extending transversely across the car; one of such wires being near the top, and the other near the middle of the standards. The wires attached to the middle of the standards had been fastened when the car was about half loaded, and the remainder of the load was placed on top of these wires, so that the weight of the poles drew the middle and upper part of the standards inward, tightly binding the load together. Appellant was employed as one of a number of men to assist in unloading the poles, and he and the other laborers were at all times subject to, and were bound to conform to, the order and direction of one Ramsey, who was employed by appellee for the purpose of having charge and control of, and who had charge and control of, the laborers, and who was appellee's only representative present at and in charge of the work of unloading the car. Ramsey ordered certain laborers to, and they did, cut all the wire stays, except the lower stay across the middle of the car, and also cut near the floor of the car all the standards on the west side of the car except the center standard. Thereupon three or four of the men, in obedience to Ramsey's order and direction, attached a wire to the top of this remaining standard, and, by pulling thereon, attempted, but were unable, to break the same, and were unable to break the standard after one of the men had cut into and weakened it near the floor of the car. After several unsuccessful efforts had been so made to break the standard, Ramsey negligently ordered appellant to take an ax and go in by the side of the car and cut the stay wire. At that time the poles remained on the car in exactly the same position they were in when the work of preparation for unloading the same began, without any shifting or change resulting from the cutting of the other stay wires or removal of the other standards, but that the poles appeared to be sufficiently and safely maintained

in position by the remaining standard on the west side of the car. Acting in obedience to Ramsey's order, appellant went to the standard and cut the stay wire. The standard immediately broke, letting the poles fall, striking appellant and injuring him. It is also averred that the appellant was twenty years of age, and had no knowledge or experience in handling telephone poles, did not know how they were loaded nor by what means they were held together on the car, nor of their liability to burst apart and break the standards as soon as the stay wires were cut, nor that the weight of a large number of them rested upon the stay wire and drew the middle standard inward with great force, nor that when the wire should be cut the standard would not be strong enough to support them, nor the manner in which they were loaded on the car, "nor the means by which the same were held together thereon, if any, other than said standards and said stays across the top of said load, but he did not and could not see the wire stays which passed through said load of poles, and between the poles from standard to standard, about the middle thereof, and did not know that the same passed through the load to the opposite standard." He knew nothing as to the danger involved in cutting the wire, and his inexperience and want of knowledge in all such respects were known to appellee and Ramsey. There are also averments that Ramsey had experience and knowledge of all present conditions, that under his direction the work was done in a negligent and careless manner, that he failed to warn appellant of the danger, and an averment as to the manner in which the work might have been done without danger.

The pleading shows that appellant was employed to do the particular work in which he was engaged when injured, and that nothing had been done towards unloading the poles until after appellant and the other men arrived at the car, and that appellant knew all that had been done in the way of preparing to unload the poles. It does not appear that any machinery or appliances were used in the

work, and that the work of beginning the unloading consisted in loosening the stay wires and removing the standards from one side of the car and permitting the poles to roll off the car onto the ground. It is averred that Ramsey omitted to do certain things, which, if they had been done, would have made the work less dangerous; but it does not appear that appellant was relying upon the work's being done in any manner other than that pursued.

Section one of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294) requires that an employe, asking damages for an injury, must have been in the exercise of due care and diligence. It is true appellant avers that he was ignorant of the danger; but can this general averment stand in the face of the specific averments showing the actual conditions surrounding him immediately before and at the time he was injured. He was twenty years of age, of average intelligence, and in possession of all his faculties. He must have known that the sole purpose in view in removing the end standards and cutting the stay wires was to permit the poles to roll from the car to the ground; that if all the standards were removed and the wires cut, the poles, piled eight feet high against the standards, would fall. He knew that the end standards on the west side of the car had been removed, and that the stay wires had all been cut except the one at the middle of the center standards. He knew that the men with the pull wire had tried to break the middle standard and failed; that this standard was cut into, and that the men were still unable to break it. He must have known that if that standard was removed the poles would fall. It is true he avers he did not know that the middle stay wires extended through to the opposite standard, but he knew there was a stay wire fastened to the middle of the standard the men were trying to remove, and he does not negative knowledge of the fact that this wire, no matter to what the other end was fastened, was helping to hold the standard, and that the purpose in

cutting the wire was to release the standard. There was nothing to prevent his looking and seeing the actual conditions as they then existed. He was not required to do the act hurriedly before another act, apparently disastrous, might happen.

Appellant was employed to do the particular work in which he was engaged when injured. He assumed such risks as were naturally and reasonably incident to 2. the work so far as the hazards of the work were obvious and within the apprehension of a person of his experience and understanding. *Republic Iron & Steel Co.* v. *Ohler* (1903), 161 Ind. 393; *Jenney Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566. The process of unloading the poles was a very simple one. There is nothing to show that anything prevented appellant from seeing the actual conditions existing at the time. The danger arose as the unloading progressed. It is not shown that he did not have ample time and opportunity to see and understand each step taken in the process. He can not be heard to say that he was ignorant of a danger which the use of his senses would have disclosed.

It is well settled that the servant has the right to presume, in the absence of warning and notice, that in conforming to the order of a foreman he will not be sub- 3. jected to injury. *Republic Iron & Steel Co.* v. *Berkes* (1904), 162 Ind. 517. But this rule has no application where the danger is obvious, and the servant has ample time to see and comprehend the danger, and must have known the danger had he used his senses. If he has time and opportunity to see the danger, he has notice of it.

In the case at bar, from all the facts pleaded, appellant must have known the purpose in cutting the wire. He knew the standard had been weakened by chopping into 4. its base. He knew if the standard was removed the poles would fall. With the end standards removed, and all the stay wires cut but this particular one, and the

middle standard weakened, he must have known the wire was assisting to hold the standard, and that if it was released the standard would probably break. All the steps taken in the process of unloading the poles were simple, all the conditions existing were open and apparent, and there is nothing in the pleading from which it can be said that appellant, twenty years old and in possession of all his faculties, was prevented from understanding and appreciating the danger to which he would be exposed by cutting the wire.

Judgment affirmed.