## MESEL *v.* FARMERS' AND MERCHANTS' BANK OF BRYANT, INDIANA.

[No. 14,166. Filed November 18, 1931. Rehearing denied May 19, 1932. Transfer denied July 29, 1932.]

*Russell R. Ridenour* and *H. M. DeVoss*, for appellant.
*Frank B. Jaqua* and *Charles E. Schwartz*, for appellee.

CURTIS, J.—The appellee commenced two causes of action in the Adams Circuit Court against the appellant which causes of action were thereafter consolidated and tried together. In one of the suits the complaint was upon the endorsement of the appellant of two promissory notes and in the other it was upon the endorsement of the appellant of one promissory note. Before the consolidation of the causes there was an amended complaint filed in the case in which the endorsements of the two notes were relied upon. The defendant answered in six paragraphs, to each of the second, third, fourth, fifth, and sixth of which the appellee filed a demurrer. The demurrer was sustained as to the third and sixth paragraphs of answer and overruled as to the second, fourth, and fifth. The appellee filed a reply in general denial to each paragraph of answer remaining after said demurrers were sustained. The cause was submitted to a jury for trial. At the close of the evidence the jury was, at the written request of the appellee, instructed by the court to return a verdict for $4,027.50 for the appellee against the appellant. Upon

the verdict of the jury the court rendered judgment for the appellee in accordance therewith. This appeal was thereupon prayed and perfected. The motion for a new trial contains 16 grounds. The first predicates error upon the giving of the said peremptory instruction to the jury, the second says the assessment of the amount of recovery is erroneous in that it is too large, the third says the verdict of the jury is not sustained by sufficient evidence, the fourth says the verdict is contrary to law and the evidence and the remaining grounds being 5 to 16 inclusive each relate to alleged error in admitting or rejecting evidence and in refusing to strike out certain exhibits and in sustaining the motions of the appellee to strike out the answers of the appellant to certain questions propounded by the appellant and in sustaining the motion of the appellee to strike out the answer of the witness Russell Ridenour to a certain question propounded by the appellant. The only errors relied upon for reversal as shown by the appellant's brief are: (1) The court erred in overruling appellant's motion for a new trial based upon the following grounds: "A. The verdict of the jury is not sustained by sufficient evidence." "B. The verdict of the jury is contrary to law and evidence." "C. The court erred in the trial of said cause in giving to the jury the following oral instructions: 'You will retire to your jury room and after selecting a foreman from among your number you will agree upon the verdict which the court has prepared and which will be sent with you to your jury room,' which verdict so sent with said jury was in the following words and figures, to wit: 'We, the jury, find for the plaintiff upon its complaint in the sum of four thousand twenty-seven dollars and fifty cents ($4,027.50).' "

We will take these alleged errors up in their inverse order. All of the evidence given in the cause is in the record. It becomes necessary under the assignment of

errors relied upon to examine the evidence to ascertain whether or not the verdict is sustained by sufficient evidence or is contrary to law, or whether or not the court erred in giving to the jury the peremptory instruction complained of. At the outset of the case it is to be borne in mind that the consolidated causes of action each rely upon the written endorsements of the appellant upon the back of the notes described in the complaints; that it is only with these contracts of endorsement that we are concerned in this case; that to these complaints the appellant filed an answer in six paragraphs. It is necessary to keep in mind the complaints and these paragraphs of answer in determining the questions presented in this appeal. The complaints were in the usual form commonly used by the owner and holder of promissory notes in a suit against an endorser. The first paragraph of the answer was a general denial. The second in effect stated that the appellant, who was also the payee in the notes sued upon, surrendered said notes to the makers thereof and unconditionally renounced all his rights against the makers of said notes and that the appellee had due notice thereof and that the appellee is not the holder of said notes in due course without notice. The demurrer to the third paragraph was sustained and we do not set out what this paragraph contained. The fourth paragraph of answer asserted that the endorsements of the appellant on the notes in question were procured by the appellant without any consideration. The fifth paragraph of answer is somewhat lengthy, but we have deemed it necessary to set out most of it verbatim. The appellant in said paragraph of answer described certain lands and leasehold interests for oil and gas purposes owned and held by him. (We do not deem it necessary to set them out) and then proceeds by saying: "Defendant further says that on or about the 10th day of November, 1926, he executed to one Claude L.

Trusler an option to purchase said leasehold estates for oil and gas, together with the oil wells and equipment and machinery thereon situated as described above. That on or about said last above mentioned date the said Claude L. Trusler and O. D. Arnold, Russell R. Ridenour, Frank Bard, Ora E. Crooks, Louis E. Thibant entered into an agreement between themselves whereby they agreed to form a partnership and do business under the name and style of Russell R. Ridenour, Trustee, for the production of oil and gas, and, whereby they agreed that they would purchase said property herein described from the defendant herein, each having an equal interest therein and that said property would be purchased and held in the name of Russell R. Ridenour, Trustee, for and on behalf of said parties above named and that it would be purchased and held for the benefit and interest equally of the said parties. Defendant further says that after the above mentioned agreement was entered into by said parties the said Claude L. Trusler procured from the defendant another option to buy said property at and for the price of $18,000.00, but that at said time it was understood by the defendant and Claude L. Trusler that the defendant herein would receive $12,000.00 only for the property. That the said Trusler, Arnold, Ridenour, Bard, Crooks, and Thibant agreed to and did purchase said property from the defendant herein and the same was taken and held in the name of Russell R. Ridenour, for and on the behalf of said above named parties. Defendant further says that the said above parties paid to the defendant herein the sum of $2,000.00, together with two checks signed by said Trusler and Arnold in the sum of $500.00 each. That said two checks were returned to the said Arnold and Trusler, and that in addition thereto the said above named parties executed fifteen notes for the sum of $1,000.00 each, payable to the defendant herein and

signed by Russell R. Ridenour, Trustee. That said notes were executed on the 15th day of December, 1926, the first of which matured three months after date. That at the same time said parties executed a mortgage to this defendant on said property, securing the notes herein above described, and which notes and mortgage were delivered to the defendant herein. That at said time the defendant returned to the said Trusler and Arnold, payors of the said notes, the last maturing five of said notes, and that the defendant did not then or thereafter claim any title to said notes, but surrendered them to the makers thereof with the intent to relinquish all interest in and to said notes. That the three notes sued on herein are three of said notes so returned by the defendant to the makers thereof and that the plaintiff herein had full knowledge of said renunciation and surrender of said notes and knew and had full knowledge of all the facts and circumstances surrounding said transaction and knew that said notes were given without any consideration and knew that the endorsement thereon of the defendant herein was made without any consideration whatever. Defendant further says that at the time said notes were executed by the parties herein above named and for a long time prior thereto the said O. D. Arnold was insolvent and worthless and, for the purpose of assisting the said Arnold to procure funds with which to pay his said indebtedness to said plaintiff, and for the purpose of wrongfully defrauding the defendant herein, requested and advised the said defendant herein to endorse his name on the back of said notes and advised him that he would not be liable thereon and the defendant, believing such statements, did endorse his name on said notes, without any consideration whatever but for the sole and only purpose of renouncing and surrendering his interest in said notes to the makers thereof. That the plaintiff herein had

full knowledge of said transaction and is not the holder of said notes in due course without notice."

The testimony that we think is necessary to consider in deciding this appeal is as follows: John Bonifas testified that he is the cashier of the appellee bank and that it is the owner and holder of three $1,000.00 notes dated December 15, 1926, due in 27, 29, and 31 months after date, payable to William Mesel (appellant), negotiable and payable at appellee bank, executed by Russell Ridenour, Trustee, and has held such notes since December 20, 1926; that he is unable to tell where the notes are; that he made copies of the notes and that the name of William Mesel appears on the back in his own signature; that he got them from O. D. Arnold and that they were collateral to a loan to said Arnold; that he had no conversation with William Mesel about endorsing them; that he did not know who Ridenour was trustee for when the notes were executed. Orville D. Arnold testified that he, Ridenour, Trusler, and Bard purchased the oil property from Mesel; that Mesel turned five of the notes over to him under his contract with Mesel; that he did not pay anything for them; that he gave the three notes to Bonifas and received nothing for them; that he talked with Bonifas about the deal the time it was made; that he gave Trusler two of the notes and he borrowed money on them at the bank; that his (Arnold's) indebtedness at the bank was at that time about $5,800.00. William Mesel, the appellant, testified that Bonifas asked him to let Arnold make the deal so that he could pay the bank some money; that when the deal was made he received $2,000.00 in cash, $1,000.00 check drawn by Arnold and 15 one thousand dollar notes signed by Russell Ridenour, Trustee, thereby making the $18,000.00 sale price of the properties; that the next day, or the second day after the sale, he and Arnold went to the bank and in the presence of Bonifas he turned

over five of the $1,000.00 notes to Arnold and also turned over the.$1,000 check; that he was settling with Arnold by giving him back all over $12,000; that Arnold was one of the company that bought his property; that when he was turning over the five notes he was told by Bonifas and Arnold to endorse them; that it was all right; that he endorsed them and got no money for them; that he traded one of these 15 notes for another note with Bonifas; that he left all of his notes at the bank for safe keeping; that when he first turned these notes over to Arnold in suit here, Mr. Bonifas said: "That's all right, when your notes are paid these will be good"; that he talked the entire deal over with Bonifas before it was made; that he put all his notes in the bank and that they had access to all of them and that he never got any of them back; that Bonifas had all of his notes he got in the deal for safe keeping, including the three notes deposited there by Arnold; that he endorsed his name on 7 of these notes; that in the first place he gave Arnold five of them and then traded one with Arnold and signed that note; that Bonifas wanted to trade with him and he signed one and traded it with Bonifas and that Bonifas was to sign what he traded and put it in his box; that Bonifas said to him at the time of the trade: "I'll fix mine and put it back in place of yours," but that Bonifas never did what he promised. On cross-examination Mesel was asked this question: "Your complaint (referring to a complaint in another cause of action) says here that the said plaintiff William Mesel is now the owner of said notes marked exhibits five to twelve inclusive in the principal sum of $8,000 and the said plaintiff, (appellee) Farmers and Merchants Bank of Bryant, Indiana, is the owner of said notes marked 4, 13, 14, and 15 in the total sum of $4,000. Is that true?" Answer: "No." Question: "These two notes marked exhibits 11 and 12, they aren't

the notes you turned over to Arnold?" Answer: "No. I don't understand it that way." Question: "What became of those other two notes?" Answer: "I don't know what became of any of them. I put them all in the bank. They had access to the whole bunch. I never had them since I put them in there." Question: "Didn't you ever get any of those five notes back?" Answer: "No, sir. I was supposed to. Mr. Bonifas said when I traded with him—I was in a hurry that morning he wanted to trade notes. He got one of my notes and he said 'I'll fix mine and put it back in place of yours.' He never done it." Question: "Didn't you testify here five or ten minutes ago that you knew Arnold turned these notes to Bonifas as collateral security?" Answer: "Two of them and the $1,000.00 in check." Question: "Then you did know about two of them before this contract?" Answer: "He took two of them, the one Mr. Bonifas traded with me and the other I traded with him. That's what I mean and the check." On re-cross-examination Mesel testified as follows: "Of these fifteen $1,000 notes that I got, I endorsed my name on the back of seven of them. In the first place I gave five to Mr. Arnold and endorsed my name on them. Then Mr. Arnold wanted to trade one of them for one I had for earlier maturity and I traded that and signed that. Then they gave that back and I gave my personal note for the thousand dollars in three notes. Then Mr. Bonifas wanted to trade with me. I signed one there. He was to sign and it would be at the bank in my box with my own but he never done it. At the time I left the ten $1,000 notes in the bank for safe keeping I hadn't endorsed any but the five. Not until I traded notes. Right after the deal was made I endorsed five of the notes and turned them to Arnold. The other ten I left at the bank but did not endorse."

The Constitution of the State of Indiana, Article 1,

Section 20, provides: "In all civil cases, the right of trial by jury shall remain inviolate." Our courts ▮ have scrupulously guarded this right against encroachment. In all cases tried by a jury the jurors are the sole and exclusive judges of the facts proven and they are of necessity the sole and exclusive judges of the credibility of the witnesses and of the weight to be given their testimony. The court, as a matter of law, however, where there is a failure of proof in the evidence of the party having the burden of an issue, may instruct the jury in favor of the other party to the issue. It is to be noted that the above language applies to the right and consequent duty of the court to direct a verdict under the circumstances set out, AGAINST the party having the burden of the issue. In directing a verdict IN FAVOR of the party having the burden of the issue a vastly different question is before the court. In an examination of the authorities it is apparent that the courts have not always kept the distinctions in mind. Since the question in the instant case arises from the giving of a peremptory instruction IN FAVOR of the party having the burden of the issue, we have examined the cases that have been decided directly upon that question.

In *Lyons, Administratrix,* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20, this court said: "There is some apparent conflict in the expressions used in the cases just cited and quoted which indicate that a peremptory instruction is never warranted in favor of the party having the burden of proof where the evidence is oral, and the expressions in other cases above cited and quoted indicate that such an instruction may be given when the evidence, though oral, is undisputed and admits of but one inference. However, all the authorities warrant the statement that it is an exceptional case that will justify the trial court in giving such instruction

on oral evidence in favor of the party having the burden of proof."

In *Stephens* v. *American Car & Foundry Company* (1906), 38 Ind. App. 414, it was said: "It has been held by this court that a request on behalf of the party having the burden of the issue on a trial, for direction to the jury to return a verdict in his favor, should not be granted when the verdict must be based upon the testimony of witnesses, wholly or partially." See also *Jacobs, Administratrix,* v. *Jolley* (1902), 29 Ind. App. 25, and numerous other cases cited therein.

In *Haughton* v. *Aetna Life Insurance Company* (1905), 165 Ind. 32, 73 N. E. 592, 74 N. E. 613, the court said: "Where the facts are admitted by the pleadings or otherwise, or when the evidence upon the controlling question is documentary, and its interpretation and construction a matter for the court, and but one conclusion reasonably deducible therefrom, then in such cases the court may, as a matter of law, direct a verdict in accordance with the evident facts, and in favor of the party having the affirmative of the issue. But where a determination of the issues involves the credibility of witnesses, and rests upon inferences and deductions being drawn from the facts proved, it will be an invasion of the province of the jury for the court to direct a verdict. . . . When the judgment of the judge upon the sufficiency of the evidence to sustain the verdict is invoked by a motion for a new trial, then it becomes his duty, under the law, to weigh the evidence for himself, and either to confirm or overthrow the conclusion of the jury as in his opinion the preponderance of the evidence may require. But until such time as the matter may be thus brought before him, the duty of weighing the evidence must be left with the jury where the law placed it."

It is clear, in the instant case, that the determination

of the issues herein involves the credibility of witnesses and rests upon inferences and deductions being drawn from facts proven, and must be based upon the testimony of witnesses, wholly or partially, and that much of .the pertinent evidence is in. dispute; that the very ownership of the notes relied upon by the appellee is not established by the evidence without dispute; that the consideration for the endorsement by the appellant of at least one of the notes held by the appellee is in dispute; that the question of whether or not the appellant turned back and surrendered the notes in question to the makers is not without dispute and that the good faith of the transaction between the appellee and appellant with respect to at least one of the endorsements of the appellant is challenged by the evidence. All of these issues were tendered by the pleadings.

Applying the principles of law heretofore announced in this opinion to the instant case it becomes apparent at once that the trial court erred in giving to the jury the complained of instruction. For this error the cause must be reversed with instructions to grant a new trial. Having reached this conclusion it becomes unnecessary to discuss other alleged errors, as they will not likely occur in a retrial. Judgment reversed with instructions to grant a new trial.