LEADER *v.* BOWLEY.

[No. 19,254. Filed November 30, 1961.]

*George T. Schilling, Russell H. Hart* and *Stuart, Branigin, Ricks & Schilling,* of counsel, all of Lafayette, for appellant.

*O'Neill & O'Neill,* of Logansport, for appellee.

BIERLY, J.—This is an action brought by Roy James Bowley, plaintiff-appellee, a farm employee, against Charles Leader, defendant-appellant, his employer, to recover damages for personal injuries.

The issues raised in said cause were formed by appellee's compaint, an answer in two paragraphs by appellant, and a reply by appellee to appellant's second paragraph of answer.

Trial was had by a jury. A verdict in the sum of $7750.00 was returned by the jury in favor of appellee. Within the time prescribed by the rules, appellant filed a motion for a new trial. This was overruled. Thereupon, the court entered judgment consistent with the verdict in favor of appellee.

Appellee alleged in his complaint that appellant directed him to remove from a mower sickle bar, a sickle, while at the time appellant attempted to loosen the sickle, by striking the head thereof with a hammer. It is further alleged by the appellee that as a result of the striking with the hammer by the appellant, a piece of cast iron broke off the head of the sickle by reasons of said blows, and, was driven into the left eye of the appellee, thereby causing injury to the plaintiff. Said complaint alleges that the injuries to appellant were due to the acts of negligence and a carelessness of

appellant in negligently striking the metal sickle head of the sickle with a hammer "within a proximate distance of two and one-half (2½) feet to three (3) feet of the position of the plaintiff;" that appellant negligently ordered appellee into a position of danger with knowledge that this position was dangerous; and that appellant was negligent in not providing goggles for appellee.

Appellant answered said complaint by denial, and an allegation that the injuries suffered by appellee were a result of risks assumed by him, and were incidental to such employment. To this, appellee alleged that he acted under direction of appellant.

At the close of appellee's evidence, appellant filed motion for a directed verdict. This motion was overruled. Moreover, at close of all the evidence, appellant renewed his motion for a directed verdict which motion the court likewise overruled.

Appellant relies in his motion for a new trial on each of the following grounds:

"1. The damages assessed by the verdict of the jury are excessive.

"2. The verdict of the jury is not sustained by sufficient evidence.

"3. The verdict of the jury is contrary to law.

"4. Errors of law occurring at the trial, as follows:

"(A) The Court erred in refusing to give to the jury at the request of the defendant each of the written instructions tendered and requested by the defendant and numbered one (1), two (2), three (3), four (4) and nine (9).

"(B) The Court erred in giving the jury, at the request of the plaintiff, plaintiff's instruction numbered one (1), and to the giving of which instruction the defendant duly objected within the proper time by filing written objections to

said instruction after the Court indicated the instructions it would give to the jury.

"5. The Court erred in overruling defendant's motion, made at the close of all the evidence, to instruct the jury to return a verdict for the defendant."

Appellant's assignment of error alleged error by the trial court in overruling appellant's motion for a new trial.

As shown by his brief, appellant, for a reversal of the judgment relies primarily upon the insufficiency of the evidence.

We may well summarize appellant's position in the case at bar, in that: (1) the foreign body entering appellee's eye was nonmagnetic; (2) the evidence was insufficient from which a reasonable inference can be deduced that appellant violated any duty he owed appellee; (3) that there is lacking evidence from which a reasonable inference can be deduced that appellee did not assume the risk; (4) and that the evidence is legally insufficient to determine appellant's negligence was the proximate cause of appellee's injury.

Appellee argues that (1) abundant evidence was produced to support the jury's verdict that the appellant had violated his duty to the appellee in failing to guard him against "the hazard and danger the appellant directed the appellee to be placed in with full knowledge of such danger on the part of the appellant," (2) the conversation between the appellant and the appellee, in which appellee said to appellant, "You knocked my eye out," and "he (appellant) said he did not mean to do it," as testified by appellee on direct examination, can only be interpreted as an assent by the appellant that his act thus was negligent, and (3) that the assumption of risk by appellee, as an issue, was waived by appellant inasmuch as appellant failed

to "sustain the burden of proof," and, further that he did not discuss or argue "the specification that the verdict was contrary to law."

The motion for a new trial questioned the giving of Instruction No. 1 at the request of appellee, and also the refusal to give Instructions 1, 2, 3, 4 and 9 as requested by the appellant. Appellee's Instruction No. 1, as given by the court follows:

> "LADIES AND GENTLEMEN OF THE JURY, You are instructed that if you find for the plaintiff, that he is entitled to recover, it becomes your duty to assess his damages in such amount as the evidence shows will fairly compensate him for the injuries sustained as charged in the complaint, if any, and in arriving at this amount you may take into account the amount of physical pain and suffering, which he has already endured, if any, by reason of his injuries;
>
> "Also you may consider his partially blinded condition if you find it to exist, the probable duration of his life and the loss of time from work, if any, caused by his said injuries and the loss or decrease in his earning capacity occasioned by such injuries, if any, and from all of the evidence in the case relating to his said injury and bearing upon his damages, assess such an amount as in the judgment of the jury will fairly compensate the plaintiff for the injuries so sustained not exceeding, however, the sum of $15,000.00 prayed for in the complaint."

Defendants in objection to said Instruction No. 1 contends that it was inapplicable to the evidence in that no evidence tended to show plaintiff was partially blinded as a proximate result of any act of negligence or omission on the part of the defendant; that no evidence tended to show loss of time by plaintiff from work as a proximate result of an injury suffered by him and proximately caused by defendant's negligence; that no evidence shows plaintiff has suffered a loss or decrease in his earning capacity in the past as a

proximate result of injury suffered by him and proximately caused by negligence on defendant's part; nor does the evidence disclose that plaintiff will be adversely affected in regard to future earning capacity due to any injury suffered and proximately caused by defendant's negligence; nor that evidence tends to disclose that plaintiff's loss of time and of earning capacity was due to the injury of the left eye, nor did the evidence disclose that the condition of plaintiff's right eye was affected by the acts of the defendant either directly or indirectly.

Appellant's further objections to said Instruction No. 1, requested by the appellee, pertains to the inference to the probable "duration of the life of the plaintiff" in that, this misled the jury and was prejudicial to the defendant since it supported the assumption that the injuries which the jury may determine plaintiff suffered were cause by some act or omission on defendant's part, which assumption was not supported by the evidence, and, that the evidence does not support the charge that the defendant caused plaintiff to suffer injury that will probably continue during plaintiff's lifetime.

Appellee testified on direct examination, as follows:

"This question, Mr. Bowley, can you tell the jury just what was said to you by Mr. Leader before you started to pull on the head of the cycle?

"A. You mean when he told me to pull on the end of the hammer?

"Q. Yes.

"A. He said, 'Get hold of that damned thing and I will see if I can drive it out of there.'

"Q. Where were you at the time?

"A. I was standing up and I laid down on my left shoulder and crawled underneath and got hold of it.

"Q. Mr. Bowley, did there come a time after June of 1955 when the vision of your left eye became impaired?

"A. Blind?

"Q. Yes.

"A. Yes."

This and other evidence of probative value was sufficient to support our conclusion that the court committed no reversible error in the giving of plaintiff's tendered Instruction No. 1 to the Jury.

As heretofore stated, defendant-appellant, charged error by the court in refusing to give appellant Instructions Nos. 1, 2, 3 and 4 with these comments:

"Each allegation relied upon by the appellee is based on the fact that appellee received an injury to his left eye by reason of appellant's conduct in striking on the head of the sickle, from being ordered into a dangerous position by appellant and from appellant's failure to supply goggles to appellee. It is appellee's contention that by reason of these acts of negligence a piece of cast iron or steel penetrated appellee's left eye. There is no evidence in the records to establish that appellant's negligent act caused a foreign body to be lodged in appellee's eye. The tractor, mower and all parts of the sickle are attracted by magnets, yet appellee's own medical witness testified that the foreign body that caused appellee's blindness was non-magnetic.

"On the basis of these facts, and every reasonable inference to be drawn from the evidence, the specifications of negligence relied on by appellee should have been withdrawn from the jury." *Bane* v. *Keefer* (1898), 152 Ind. 544, 53 N. E. 834. (See appellant's brief, page 50.)

At the close of all the evidence appellant tendered his Instruction No. 1, to-wit:

"I instruct you to return a verdict in favor of the defendant."

This the court refused to do.

Mindful of the Indiana Constitutional Provision set forth in Art. 1, §20, Burns' Ind. Stat., 1955 Replacement, p. 36, that "In all civil cases, the right of trial by jury shall remain inviolate," our courts have rigorously guarded this right against encroachment. *Mesel* v. *Farmers', etc., Bank* (1931), 95 Ind. App. 33, 178 N. E. 305.

Thus a peremptory instruction directing a verdict is unavailable unless a total lack of evidence upon some essential issue is manifest, or where no conflict of evidence is presented, and such evidence is susceptible of but one inference and such inference is in favor of the party requesting the instruction. It further is the duty of the court to "accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction, all inferences which the jury might reasonably draw, and, in case of conflict consider that evidence only which is favorable to the party against whom the instruction is requested, that favorable to the other party being treated as withdrawn." *Hamble* v. *Brandt* (1934), 98 Ind. App. 399, 401, 402, 189 N. E. 533; *Kettner* v. *Jay* (1940), 107 Ind. App. 643, 26 N. E. 2d 546; *Tabor* v. *Continental Baking Company* (1941), 110 Ind. App. 633, 38 N. E. 2d 257.

Negligence is ordinarily a matter for the jury. When facts are alleged and proved indicating that a relationship exists between the plaintiff and the defendant which imposes a legal duty upon the defendant to exercise care toward the plaintiff, and when the evidence presented by the plaintiff is sufficient to warrant reasonable minds to infer a violation

of this duty by the defendant by failing to exercise ordinary care in a particular that has been alleged in the complaint, the court would properly refuse to direct a verdict for the defendant. *Tabor* v. *Continental Baking Company, supra,* page 646.

". . . The terms 'due care,' 'ordinary care,' and 'reasonable prudence' are not terms that can be arbitrarily defined. They are matters that the members of the jury may properly determine by referring to their own experience and observation. . . ." *Ibid.,* see p. 647.

We think the court committed no reversible error in refusing to give defendant's tendered Instruction No. 1 to the jury.

Appellant's requested Instructions Nos. 2, 3 and 4 raise substantially the same question; that the evidence is legally insufficient to warrant the jury to find that appellant was negligent in the respects alleged and which negligence was the proximate cause of plaintiff's injury as alleged in the complaint. The record discloses that there was evidence tending to support the several allegations of negligence charged in the complaint and from which the jury could determine the issue of proximate cause.

It follows that there was no error in the trial court in refusing to withdraw said issues from the consideration of the jury.

Appellant urges error by the court in refusing to give to the jury his tendered Instruction No. 9, which is as follows:

"If you find that the plaintiff suffered an injury as a result of a risk or danger WHICH HE KNEW ABOUT and appreciated, or which in the exercise of reasonable care he should have known about and appreciated, and if you find that he exposed himself to that risk or danger WITHOUT MAKING

ANY PROTEST, COMPLAINT OR OBJECTION, then under the law he assumed the risk of such injury, and this is so even though you may also find that the defendant, as his employer, directed him to be or remain in the place where he was so exposed."

This proposed instruction involves the assumption of risk by plaintiff-appellee, as an employee of appellant, the employer.

Appellant charges error for the trial court to refuse his tendered Instruction No. 9. He further contends that "although an employee receiving a specific command or direction may rely upon the fact that he will not be ordered into danger, 'if the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril.' *The Brazil Block Coal Company* v. *Hoodlet*, 129 Ind. 327, 336, 27 N. E. 741 (1891); *Chicago, Indianapolis & Louisville Railway Company* v. *Sanders*, 42 Ind. App. 585, 86 N. E. 431 (1908); *Shaver* v. *Home Telephone Company*, 36 Ind. App. 233, 75 N. E. 288 (1905)." (Appellant's Brief, p. 46.)

Further, appellant supports his claimed error by the court as follows:

"It is the appellee's contention that the appellant, having full and complete knowledge of the dangerousness of striking the sickle, ordered appellee into this dangerous position. If this is such a risk that the appellant owed appellee the duty of protection, then it is likewise a risk which the appellee, as a man of farming experience, who had worked around farm machinery and who observed appellant's actions before obeying any direction to assist, must have realized. It is clear that appellee must have understood the danger, if there was danger, and hence the question of assumption of risk becomes one for the court to decide. There is no evidence in the record, nor is there an inference from any evidence, that appellant was in any bet-

ter position to understand the risks involved than appellee. When the danger, if any, is open to the observation of both master and servant, the servant cannot recover for an injury resulting from such danger. *Swanson* v. *The City of Lafayette*, 134 Ind. 625, 33 N. E. 1033 (1893) ; *The Louisville and Nashville Railroad Company* v. *Kemper*, 147 Ind. 561, 47 N. E. 214 (1896)."

The gist of appellant's argument in favor of the giving of said Instruction No. 9 is to the effect that the appellee assumes such risk of which he and the appellant have equal means of knowledge, and thus there is no duty of appellant to protect the appellee, since the appellee is in an equal position to protect himself.

The case of *Staldter* v. *City of Huntington* (1899), 153 Ind. 354, 55 N. E. 88, relied upon by appellant, presented a situation where appellant brought an action against the city and its contractors "for injuries sustained by plaintiff by reason of an explosion of dynamite in the sewer in which he was at work." Evidence disclosed that plaintiff knew of the unsafe condition of the trench in the same degree as his employers, and hence no error was committed by the court in directing the jury to return a verdict in favor of defendants. We think this case is not analogous with the case at bar.

On cross-examination of appellee, the record discloses these questions and answers:

"Q. After you had this conversation with him, you then got down on your left shoulder and got hold of the ball and started to pull it?

"A. Yes.

"Q. You did not have to get hold of it with your two hands?

"A. I did. I put the left and right hand around and pulled on it.

"Q. Now, Mr. Bowley, you did not have to get hold at that time, did you?

"A. I would not go there for the purpose of getting my eyes knocked out.

Both appellant and appellee included in their briefs the following continuation of testimony on cross-examination of appellee:

"Q. It never occurred to you there was ever any danger there?

"A. No, I never thought anything about it.

"Q. *And because you did not think there was any danger, you did not make any complaints to Mr. Leader, did you?*

"A. *When you are working for a man you have to do what he tells you to do or you will get canned.*

"Q. Did you make any complaints to him?

"A. No.

"Q. Since you thought there was no danger, you did not attempt to turn your head to protect yourself or close your eyes?

"A. You naturally close your eyes.

"Q. What else did you do?

"A. I did not know of anything else. (Emphasis supplied by appellee.)

From cross-examination above set forth, it appears that the trial court may well have inferred that appellee assumed a position of danger, not voluntarily, but by direction of the employer; that he obeyed appellant who apparently displayed impatience when he directed appellee thus: "Get hold of that damned thing and I will see if I can drive it out of there."

In support of his objection to the court's ruling in refusing to submit Instruction No. 9 to the jury, appellant quotes from the case of *The Brazil Block Coal Company* v. *Hoodlet, supra,* page 336:

". . . If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. . . ."

The Supreme Court in this case affirmed the trial court.

We may add that the above quotation was taken out of context and we quote a part of the opinion from which it is taken to-wit:

". . . When a master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the ██ risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. *If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. But unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the risk apparently assumed, and if he is injured the master must respond in damages.*" See *McKinnon* v. *Parrill* (1942), 111 Ind. App. 343, 361, 38 N. E. 2d 1008. (Emphasis supplied.)

From the evidence we think that the jury could reasonably infer that the act performed by appellee, as directed by appellant, involved a risk not contemplated by the usual duties of his employment, and that the appellee did not assume the increased risk nor was he negligent in obeying appellant's order. We are unable to agree with appellant that the court erred in its refusal to submit said Instruction No. 9 to the jury.

While the testimony was in conflict relative to the position of the appellee, and the circumstances under which the appellant was striking the head of the ██ sickle when appellee was injured by a piece of metal puncturing the eye ball of his left eye, it is the rule that an appellate tribunal will not weigh the evidence. *McKee* v. *Mutual Life Ins. Co. of New York* (1943), 222 Ind. 10, 51 N. E. 2d 474; *Haynes* v.

*Brown* (1949), 120 Ind. App. 184, 88 N. E. 2d 795; *Scoopmire* v. *Taflinger* (1944), 114 Ind. App. 419, 52 N. E. 2d 728. Hence this court has no alternative but to consider only the evidence most favorable to the appellee. It has been held in a great number of cases, that this court cannot, and will not, weigh the evidence, but accept that taken by the trial court as trustworthy. *Union School Township* v. *First National Bank of Crawfordsville* (1885), 102 Ind. 464, 2 N. E. 194, and authorities cited in *Riehl et al.* v. *The Evansville Foundry Association* (1885), 104 Ind. 70, 3 N. E. 633.

It is for the trier of the action to reconcile, reject or accept part of disputed or conflicting testimony even when made by the same witness and that witness ■ is a party to the action. *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 37 N. E. 2d 5.

We think there was evidence of probative value which went to the jury, and from which evidence it was within the province of the jury to draw reasonable ■ able inferences, and though the evidence may be of such a character that reasonable men could adopt different conclusions therefrom, we have neither the prerogative nor the privilege "to substitute our judgment for that of the jury." *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82.

In a case of foreign jurisdiction, 67 A. L. R. 2d 1144, §5 of the Annotation, [c], footnote 3, reads as follows:

"It was said in *Poling* v. *Charbonneau Packing Corp.* (1954), 45 Wash. 2d 845, 278 P. 2d 375, that a farm servant cannot recover from his master for an injury received in the performance of an act, although directed by the master, if the act directed is one which no reasonably prudent person, having

regard for his own safety, would undertake, but on the other hand, a servant may recover for an injury received in the performance of an act directed by the master, even if the servant has some knowledge of the dangers of performance, if he acts with that degree of prudence which an ordinarily prudent man would exercise under the circumstances; that this latter rule is founded on plain principles of justice, *since the master and servant are not altogether on an equal footing because it is the right of the master to direct his servant, and the primary duty of the servant is to obey, and because the master ordinarily has superior knowledge of the facts and conditions, and the servant has a right to assume that the master will not expose him to unnecessary perils.*

"Where an employee by order of his master is directed to do farm work not contemplated in his employment and *not usually performed by him,* the usual rule of assumption of risk does not apply when the servant is injured while performing such work; in such cases it becomes a question of fact for the jury to determine from the evidence whether in obeying such order and performing such work, he assumed the risks incident thereto or whether, in performing such work, he was guilty of any negligence proximately contributing to the injury for which he seeks recovery. *McKinnon* v. *Parrill* (1942), 111 Ind. App. 343, 38 N. E. 2d 1008." (Our emphasis.)

In the case at bar, testimony was to the effect that the appellant directed appellee to take hold of the ball attached to the end of the sickle head and pull on it while appellant was using a hammer in striking the jammed sickle to loosen it to permit its removal. As underscored in the above quoted passage, "it is the right of the master to direct his servant, and the primary duty of the servant is to obey, and because the master ordinarily has superior knowledge of the facts and conditions, and the servant has a right to assume that the master will not expose him

to unnecessary perils," the principles stated therein appear applicable to the case at bar. Here the testimony reveals that on the date of appellee's injury, the appellant directed the appellee to remove the mower from its storage place, and thence to remove the sickle from the mower and substitute another sickle. While it was apparently within the scope of appellee's employment to change sickle knives, we think it was within the province of the jury to determine from the facts whether the removal of the sickle knife under the circumstances was within the farm work contemplated in appellee's employment.

When appellee reported to appellant his inability to remove the sickle, appellant secured a hammer to attempt to jar it loose, and while so attempting to loosen the sickle ordered appellee to "get hold of the end of that [sickle head ball] and pull and I will try to get it out of there." [Brackets for clarity.]

It appears that it became a matter for the jury to determine whether the appellant directed appellee to perform "farm work not contemplated in his employment and not usually performed by him," and whether "the usual assumption of risk does not apply when the servant (appellee) is injured while performing such work." (Our insertion.) We think that the evidence and inferences that may have been drawn by the jury were sufficient to justify its conclusion that the injury occurred from farm work not contemplated in his employment.

We think that it was a matter for the jury to determine from the evidence whether in the performance of such work, appellant was guilty of any negligence proximately contributing to the injury for which he seeks recovery. See *American Steel, etc., Co.* v. *Carbone* (1915), 60 Ind. App. 484, 485, 109 N. E. 220.

The general verdict in favor of appellee is a finding that he was free from contributory negligence, and that there was no asumption of risk on his part. There was no evidence of any previous occurrence when appellee had ever attempted to remove a mower sickle knife under similar circumstances when appellant attempted to "break" a sickle from the bar by use of a hammer.

The burden of proving contributory negligence was for the appellant; and unless it be construed a matter of law that appellee was guilty of contributory negligence, there should be no disturbance of the verdict of the jury relative to that matter. We do not consider that there was such a showing made under the evidence in the case at bar.

According to the undisputed evidence by Raymond R. Calvert, M. D., a specialist, pertaining to his examination of appellee's left eye subsequent to his injury, Dr. Calvert testified that the injury was due to ". . . a penetrating foreign body boring through the iris and the crystalline lens." After locating the foreign body by X-Ray, as to the shape, size and position, his testimony further was to the effect that it was a metallic substance but non-magnetic and unaffected by a magnet.

We believe that there is sufficient evidence of probative value in the record which would have warranted the jury to infer that the blow of a hammer wielded by appellant in striking the head of the sickle projected the foreign body into the left eye of the appellee thereby causing the injury complained of.

We think that the jury from the evidence and all reasonable inferences deduced therefrom, may have concluded that the foreign body which penetrated the left eye of the appellee was a non-magnetic metallic substance projected by the act of appellant.

According to the record, appellee continued in the employment of appellant from June 17, 1955, the date of the accident, until about December 31, 1956. Following this date, appellee, due to his eye injury, was unemployed for approximately three months, after which he secured employment of one Leotis Gregory, as a farm hand and part time carpenter until November 7, 1957, when appellee testified in answer to a question, "Did you quit that job?", he answered, "No, I got laid off or fired, whatever you call it."

There was testimony favorable to appellee that his eye sight became progressively impaired rendering him less and less able to do work assigned him, such as the driving of a tractor, the use of a hand saw, and in driving nails as a carpenter. Further, during the years 1956 and 1957, appellee experienced no sight in his left eye and that he was unable to continue in a factory job in Hammond due to the impairment of his sight. Testimony by appellee on direct examination relative to the gravity of his eye injury and its effect on the sight of his right eye follows:

"Q. You may not tell the jury what the doctor told you, but you may tell the jury what you learned?"

"A. I learned if it [left eye] was operated on, it would probably injure the other eye. [Brackets supplied.]

"Q. To what extent?

"A. To make it blind.

"Q. In both eyes.

"A. Yes, Sir."

We think from the facts as given by the testimony, a jury from all facts and all reasonable inferences deductible therefrom, could conclude that the impairment of the sight of the right eye of appellee was occasioned

by and the result of the injury to the left eye due to the accident complained of.

As to the damages awarded by the jury due to said injury the general rule is "Ordinarily, where the question is submitted to a jury, the amount of damages to be awarded is a matter for the jury." 9 West's Indiana Law Encyclopedia, *Questions for Jury*, ch. 9, §165, p. 422; *Pittsburgh, Cincinnati and St. Louis Railway Company* v. *Sponier* (1882), 85 Ind. 165; *Kindler, etc.* v. *Edwards* (1955), 126 Ind. App. 261, 130 N. E. 2d 491; *Armstrong Cork Co.* v. *Maar, supra;* 25 C. J. S. *Damages*, §176, p. 856.

In the case of *N.Y.C. & St. L. R. R. Co.*v. *Connaughton* (1937), 211 Ind. 419, 5 N. E. 2d 904, which a railroad fireman in the course of his employment lost the sight of his left eye, caused by cinders emitted from the engine, the court awarded damages of $8,000.00 in favor of the plaintiff, which award was affirmed by the Supreme Court.

In the case of *George B. Limbert & Co.* v. *Waznitsky* (1921), 191 Ind. 419, 133 N. E. 128, the trial court awarded plaintiff damages in the sum of $6,878.00 because of injuries to the eyes of appellee, an iron molder, who was unable to resume his employment at his trade, and the Supreme Court affirmed the trial court. These cases appear in point to the case at bar.

The facts under which the injury occurred, the question as to whether appellee and appellant were on an equal basis in assuming the risk of danger at the time of the injury, the allegation of negligence charged against the appellant and the matter of contributory negligence upon the part of appellee, were before the jury, and it was for the jury to fix damages, if any, for the appellee.

Unless damages are of such an amount as to indicate that the jury was influenced by prejudice, passion, corruption or partiality, or a failure to comprehend the nature of the evidence in assessing the amount of damages, the Appeal Court will not disturb the verdict of the jury. We believe the record does not indicate the jury was so motivated.

We believe the evidence in the case at bar of probative value is sufficient to sustain the judgment and was not contrary to law.

Upon our conclusions heretofore reached, we are of the opinion the trial court committed no reversible error in overruling appellant's motion for a new trial, and that said judgment should be affirmed.

Judgment affirmed.

Kelley, P. J., and Gonas and Pfaff, JJ., concur.

NOTE.—Reported in 178 N. E. 2d 445.